THE DIAMOND MATCH COMPANY, Respondent, *v.* WILLIAM ROEBER Appellant.

Defendant, who was engaged in the manufacture in this State, and sale throughout the States and territories, of friction matches, sold his manufactory, stock, fixtures, trade, trade-mark and good will of the business, to a corporation then engaged in the same manufacture in the States of Connecticut, Delaware and Illinois, selling its manufactures throughout the country. The bill of sale contained a covenant, on the part of defendant, with the purchaser "and assigns" that he would not, at any time within ninety-nine years, engage in such manufacture or sale, except in the service of the purchasing company, within any of the States or territories, except Nevada and Montana ; defendant also, at the same time executed to the purchaser a bond in the penalty of $15,000, conditioned to pay that sum as liquidated damages in case of a breach of his covenant. In an action upon the covenant, *held*, that the restraint was partial, and not general, and that the covenant was valid ; also, that the equitable jurisdiction of the court to enforce said covenant was not excluded by the fact that defendant, in connection with it, executed the bond.

*It seems* that, while the early doctrine of the common law that contracts in general restraint of trade are void, without regard to circumstances, has not been fully abrogated, it has been much weakened and modified.

As to whether such a covenant is invalid, where the restraint is general, but, at the same time, is co-extensive only with the interest to be protected, and with the benefits intended to be conferred, *quære*.

The motive of the covenantee is not the test of the validity of such a covenant. A party may legally purchase the trade and business of another for the very purpose of preventing competition, and its validity, if supported by a consideration, depends upon its reasonableness as between the parties.

The question as to what is a general restraint of trade does not depend upon State lines ; they are not the boundaries of trade and commerce, and a restraint is not necessarily general which embraces an entire State.

Also *held*, that defendant was not in a position entitling him to raise the question that the contract was, on the part of the corporation, *ultra vires ;* that having received the benefits thereof, he must abide by its terms.

Also *held*, the plaintiff, as successor and assignee of the purchasing corporation was entitled to maintain the action; and the fact that it is a foreign corporation was no objection.

The history of litigation upon the subject of contracts in restraint of trade showing the tendency of recent judicial opinion toward the relaxation of the old common law rule given, and the authorities, collated.

(Argued June 8, 1887 ; decided October 4, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, made March 20, 1885, which modified as to an additional allowance of costs and affirmed, as modified, a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to restrain the defendant from engaging in the manufacture or sale of friction matches in violation of a covenant in a bill of sale executed by defendant, which is set forth in the opinion, wherein also the material facts are stated.

*Robert Sewell* for appellant. Contracts in restraint of trade cannot be enforced at law or in equity. (2 Par. on Cont. 748 ; 752 ; *Mitchell* v. *Reynolds*, 1 P. Williams, 181 ; *Homer* v. *Ashford*, 3 Bing. 320 ; *Horner* v. *Graves*, 7 id. 735 ; *Noble* v. *Bates*, 7 Cow. 307 ; *Maier* v. *Homan*, 4 Daly, 168 ; *Bingham* v. *Maigne*, 52 Super. Ct. 90 ; *Sar. Co. Bk.* v. *King*, 44 N. Y. 90 ; *Curtis* v. *Gokey*, 68 id. 300 ; *Lawrence* v. *Kidder*, 10 Barb. 641, 647 ; *Chappel* v. *Brockway*, 21 Wend. 157 ; *Ross* v. *Sadgbeer*, id. 166 ; *Holbrook* v. *Waters*, 9 How. 335 ; *Dunlop* v. *Gregory*, 10 N. Y. 241 ; *Oregon Steamboat Case*, 20 Wall. 64 ; *Arnott* v. *Pittston C. Co.*, 68 N. Y. 506 ; *Ebling* v. *Bauer*, 17 Week. Dig. 497 ; *Mackinnon Pen Co.* v. *Fountain Ink Co.*, 422, 423.) Neither can the contract in question be sustained under the authorities as one in partial restraint of trade. (*Stearns* v. *Barrett*, 1 Pick. 450 ; *Pierce* v. *Fuller*, 8 Mass. 226 ; *Perkins* v. *Lynn*, 9 id. 530 ; *Morse Drill Co.* v. *Morse*, 103 id. 73 ; 30 Ga. 414 ; 45 id. 319 ; 8 id. 567 ; *Holmes* v. *Martin*, 10 id. 503 ; *Wright* v. *Rider*, 36 Cal. 357 ; *Oregon S. Nav. Co.* v. *Windsor*, 20 Wall. 67 ; *Taylor* v. *Blatchford*, 13 Allen, 375 ; *Dunlop* v. *Gregory*, 10 N. Y. 241 ; *Moore* v. *Bennett*, 40 Cal. 251 ; *W. Va. Trans. Co.* v. *O. R. P. L.*, W. Va. 600, 617 ; *Law-*

*rence* v. *Kidder*, 10 Barb. 641; *Horner* v. *Graves*, 7 Bing. 735; *Bingham* v. *Maigne*, 52 Super. Ct. 90; *Mandeville* v. *Harman*, 23 Rep. 372; *Keeler* v. *Taylor*, 53 Penn. St. 469; *Kimberly* v. *Jennings*, 6 Sim. 352; *Hitchcock* v. *Coker*, 5 Ad. & El. 454; *Brewer* v. *Marshall*, 4 C. E. Gr. 537, 546; *Leather Cloth Co.* v. *Lorsent*, L. R. 9 Eq. 345; *Jarvis* v. *Peck*, 10 Paige, 118; *Ward* v. *Byrne*, 5 M. & W. 548; *Hinde* v. *Gray*, 1 M. & G. 195; *Allsopp* v. *Wheatcroft*, L. R. 15 Eq. 79; *Collins* v. *Locke*, 4 App. Cas. 464; 1 Smith's L. Cas. [8th ed.] 432; *Arnott* v. *P. & E. Coal Co.*, 68 N. Y. 558.) Plaintiff has failed in making out a case for the interposition of a court of equity. (Waterman on Spec. Per. Conts. 727; 2 Story Eq. Jur. § 1318; *Bagley* v. *Peddie*, 16 N. Y. 469; *Kemp* v. *Knick. Ice Co.*, 69 id. 58; *Little* v. *Banks*, 85 id. 258; *Marshall* v. *Peters*, 12 How. Pr. 218; *Balcom* v. *Julien*, 22 id. 349; *Denning* v. *Chapman*, 11 id. 382: *Ward* v. *Kelsey*, 14 Abb. Pr. 106; *Sixth Ave. R. R. Co.* v. *Kerr*, 28 How. 382; *Lathrop* v. *Lathrop*, 47 id. 532; *Griffin* v. *Winne*, 10 Hun, 571; *McHugh* v. *R. R. Co.*, 66 Barb. 612; *Nessle* v. *Reese*, 19 Abb. Pr. 240; *Barnes* v. *McAllister*, 18 How. 534.) The courts will not, by injunction, restrain a party from the violation of a contract in which the parties have fixed and liquidated the damages for such violation. (Willard's Eq. Jur. 274, 278; Hoffman's Prov. Rem. 215; *Howell* v. *L. I. R. R. Co.*, 22 Week. Dig. 487; *Dunlop* v. *Gregory*, 10 N. Y. 241; *Nobles* v. *Bates*, 7 Cow. 307; *Vincent* v. *King*, 13 How. Pr. 234; *Barnes* v. *McAlister*, 18 id. 534; *Bagley* v. *Peddee*, 16 N. Y. 469; *Dakin* v. *Williams*, 17 Wend. 447; *Knapp* v. *Maltby*, 13 id. 587; *Price* v. *Green*, 16 M. & W. 346; *Galsworthy* v. *Strutt*, 1 W. H. & Y. [Exch. R.] 659; *Wooster* v. *Kirch*, 26 Hun, 61; *Kemp* v. *Knick. Ice Co.*, 69 N. Y. 58; *Ft. Clark R. R. Co.* v. *Anderson*, 108 Ill. 64; *S. C.*, 29 Alb. Law Jour. 104; *Little* v. *Banks*, 85 N. Y. 258, 266.) Independently of the question as to whether or not it is against public policy to have this contract stand at all, the convenience of the people of this State is to be taken into consideration. (*Wedgwood* v. *Adams*,

6 Beav. 600 ; *Cullen* v. *H. W. P. Co.*, 116 Mass. 90 ; *Arnott* v.
*P. & E. C. Co.*, 68 N.Y. 566 ; *Stone* v. *Pratt*, 25 Ill. 75 ; Pome-
roy's Eq. Jur. §§ 934, 1405 ; *Shrewsbury & B. R. R. Co.*
v. *L. & N. W. R. R. Co.*, De G. M. & G. 115 ; *S. C.*, 6
H. & L. 113 ; *Godwin* v. *Collins*, 4 H. & D. 28.) Equity
will refuse to decree the specific performance of this contract,
because it is *ultra vires.* (*Christian Un.* v. *Yount*, 101 U. S.
356 ; *State* v. *B. R. R. Co.*, 25 Vt. 488 ; Morawetz on Corp.
§§ 502–507, 509 *et seq ; Bard* v. *Poole*, 12 N. Y. 495 ; *White*
v. *Howard*, 46 id. 114.) A contract injuriously affecting the
revenue of the country cannot be enforced. (*Smith* v. *Mer-
ritt*, 14 N. Y. 452 ; *Meux* v. *Humphreys*, 3 C. & P. 79.)
The covenant now sought to be enforced was purely a personal
one between the defendant and the plaintiff's assignor, and
could not be transferred. (*E. H. & N. R. R. Co.* v. *Comm.*,
9 Bush. [Ky.] 438.)

*Noah Davis* for respondent. The defendant's objection
that the plaintiff is confined to an action at law for the liqui-
dated damages mentioned in the bond is not well taken, he is
entitled to the enforcement of defendant's covenants by a
court of equity. (*Phœnix Ins. Co.* v. *Cont. Ins. Co.*, 87
N. Y. 400, 404 ; *Long* v. *Bowring*, 33 Beav. 585 ; *Howard*
v. *Woodward*, 10 Jur. [N. S.] 1123 ; *Coles* v. *Sims*, 5 De G.
McN. & G. 1, 11 ; *Bird* v. *Lake*, 1 Hun & Miller Ch. 111 ;
*Dooley* v. *Watson*, 1 Gray [Mass.] 414 ; *Graham* v. *Bickham*,
4 Dallas, 150 ; *Clark* v. *Jones*, 1 Denio, 516 ; *Fisher* v. *Bar-
rett*, 4 Cush. 381 ; *Plunkett* v. *Meth. Ch.*, 3 id. 561 ; *Logan*
v. *Weinholt*, 1 C. L. & F. 611 ; *Gillis* v. *Hall*, 2 Brewster,
342 ; *Jones* v. *Heavens*, L. R. 4 Ch. Div. 636.) The covenant
is not void as being in restraint of trade. (*Curtis* v. *Gokey*,
68 N. Y. 300 ; *Oregon St. Nav. Co.* v. *Winsor*, 20 Wall. 64.)
The covenant was reasonable. (*Chappell* v. *Brockway*, 21
Wend. 162 ; *Horner* v. *Graves*, 7 Bing. 743 ; *Dunlap* v.
*Gregory*, 6 Seld. 241 ; *Jarvis* v. *Peck*, 10 Paige, 118 ; *Gillis*
v. *Hall*, 2 Brews. 342 ; *Morgan* v. *Perhamus*, 36 O. St. 517 ;
*Hedge* v. *Lowe*, 47 Ia. 137 ; *Peltz* v. *Echele*, 62 Mo. 171 ;

*Hearn* v. *Griffin*, 2 Chit. R. 407 ; *Leighton* v. *Wales*, 3 M. & W.
345 ; *Morris* v. *Coleman*, 18 Vesey, 437 ; *Brown* v. *Guy*, 4
East 190 ; *Leather C. Co.* v. *Lorsent*, L. R. 9 Eq. 345 ; *Rous-*
*sillon* v. *Rousillon*, 14 L. R. Ch. Div. 351 ; 2 High on Inj.
chap. 19, § 1174 ; *Heller* v. *Hersee*, 10 Hun, 433.)    The
contract in this case is not in restraint of trade within the
meaning and policy of the rule invoked by the appellant.
( *Wallis* v. *Day*, 2 M. & W. 273 ; *Morse T. D. & M. Co.* v.
*Morse*, 103 Mass. 73.)    The plaintiff, as successor of the Swift
& Courtney & Beecher Company, and as the assignee of all
its business and property and of the defendant's obligation, is
entitled to the same rights and privileges, and the same
remedies under that obligation as were possessed by its prede-
cessor and assignor.    (*Hedge* v. *Lowe*, 47 Ia. 137 ; *McHenry*
v. *Jewett*, 90 N. Y. 58 ; *Williams* v. *W. Un. Co.*, 93 id. 640.)
Defendant not having returned or offered to return the con-
sideration paid to him, he cannot, therefore, insist that he is
not bound by the obligation for which that consideration was
given.    (*Gould* v. *Cayuga Co. Bk.*, 86 N. Y. 75 ; *Howard*
v. *Hayes*, 47 Super. Ct. 89 ; *Farrell* v. *Corbett*, 4 Hun, 128 ;
*Whitney A. Co.* v. *Barlow*, 68 N. Y. 62 ; *Parish* v. *Wheeler*
22 id. 508 ; *Pratt* v. *Eaton*, 18 Hun, 293.)    The assumption
that the plaintiff, as a foreign corporation, cannot maintain
this action, is without foundation.    (Code of Civil Pro. § 1779 ;
*Merrick* v. *Van Santvoord*, 34 N. Y. 208 ; *Bk. of Augusta* v.
*Earle*, 13 Peters 519 ; *Hibernia Bk.* v. *Lacombe*, 84 N. Y.
367 ; *Bk. of Mich.* v. *Williams*, 5 Wend. 478 ; *Silver L. Bk.*
v. *North*, 4 Johns. Ch. 370; *P. & B. P. Works* v. *Willetts*,
14 Abb. 119 ; *Western Res. Bk.* v. *Potter*, 1 Clark Ch. 432.)

ANDREWS, J.  Two questions are presented : First. Whether
the covenant of the defendant contained in the bill of sale
executed by him to the Swift & Courtney & Beecher Com-
pany on the 27th day of August, 1880, "that he shall and will
not, at any time or times within ninety-nine years, directly or
indirectly engage in the manufacture or sale of friction
matches (excepting in the capacity of agent or employe of

said The Swift & Courtney & Beecher Company), within any of the several States of the United States of America, or in the territories thereof, or within the District of Columbia, excepting and reserving, however, the right to manufacture and sell friction matches in the State of Nevada and in the territory of Montana," is void as being a covenant in restraint of trade; and, Second, as to the right of the plaintiff, under the special circumstances, to the equitable remedy by injunction to enforce the performance of the covenant. There is no real controversy as to the essential facts. The consideration of the covenant was the purchase by the Swift & Courtney & Beecher Company, a Connecticut corporation, of the manufactory No. 528 west Fiftieth street, in the city of New York, belonging to the defendant, in which he had, for several years prior to entering into the covenant, carried on the business of manufacturing friction matches, and of the stock and materials on hand, together with the trade, trade-marks and good will of the business, for the aggregate sum (excluding a mortgage of $5,000 on the property, assumed by the company) of $46,724.05, of which $13,000 was the price of the real estate. By the preliminary agreement of July 27, 1880, $28,000 of the purchase-price was to be paid in the stock of the Swift & Courtney & Beecher Company. This was modified when the property was transferred August 27, 1880, by giving to the defendant the option to receive the $28,000 in the notes of the company or in its stock, the option to be exercised on or before January 1, 1881. The remainder of the purchase-price, $18,724.05, was paid down in cash, and subsequently, March 1, 1881, the defendant accepted from the plaintiff, the Diamond Match Company, in full payment of the $28,000, the sum of $8,000 in cash and notes, and $20,000 in the stock of the plaintiff, the plaintiff company having, prior to said payment, purchased the property of the Swift & Courtney & Beecher Company and become the assignee of the defendant's covenant. It is admitted by the pleadings that in August, 1880 (when the covenant in question was made), the Swift & Courtney & Beecher Company carried on

the business of manufacturing friction matches in the States of Connecticut, Delaware and Illinois, and of selling the same "in the several States and territories of the United States and in the District of Columbia;" and the complaint alleges, and the defendant in his answer admits, that he was at the same time also engaged in the manufacture of friction matches in the city of New York, and in selling them in the same territory. The proof tends to support the admission in the pleadings. It was shown that the defendant employed traveling salesmen and that his matches were found in the hands of dealers in ten States. The Swift & Courtney & Beecher Company also sent their matches throughout the country wherever they could find a market. When the bargain was consummated, on the 27th of August, 1880, the defendant entered into the employment of the Swift & Courtney and Beecher Company, and remained in its employment until January, 1881, at a salary of $1,500 a year. He then entered into the employment of the plaintiff and remained with it during the year 1881, at a salary of $2,500 a year, and from January 1, 1882, at a salary of $3,600 a year, when a disagreement arising as to the salary he should thereafter receive, the plaintiff declining to pay a salary of more than $2,500 a year, the defendant voluntarily left its service. Subsequently he became superintendent of a rival match manufacturing company in New Jersey, at a salary of $5,000, and he also opened a store in New York for the sale of matches other than those manufactured by the plaintiff. The contention by the defendant that the plaintiff has no equitable remedy to enforce the covenant, rests mainly on the fact that contemporaneously with the execution of the covenant of August 27, 1880, the defendant also executed to the Swift & Courtney & Beecher Company a bond in the penalty of $15,000, conditioned to pay that sum to the company as liquidated damages in case of a breach of his covenant.

The defendant for his main defense relies upon the ancient doctrine of the common law first definitely declared, so far as I can discover, by Chief Justice PARKER (Lord Macclesfield) in

the leading case of *Mitchel* v. *Reynolds* (1 P. Williams, 181),
and which has been repeated many times by judges in England
and America, that a bond in general restraint of trade is void.
There are several decisions in the English courts of an earlier
date in which the question of the validity of contracts restrain-
ing the obligor from pursuing his occupation within a
particular locality were considered.   The cases are chronologi-
cally arranged and stated by Mr. Parsons in his work on
Contracts (Vol. 2, p. 748, note).   The earliest reported case,
decided in the time of Henry V, was a suit on a bond given by
the defendant, a dyer, not to use his craft within a certain
city for the space of half a year.   The judge before whom
the case came indignantly denounced the plaintiff for procur-
ing such a contract, and turned him out of court.   This was
followed by cases arising on contracts of a similar character,
restraining the obligors from pursuing their trade within a
certain place for a certain time, which apparently presented
the same question which had been decided in the dyer's case,
but the courts sustained the contracts and gave judgment
for the plaintiffs; and, before the case of *Mitchel* v. *Reynolds*,
it had become settled that an obligation of this character, lim-
ited as to time and space, if reasonable under the circumstances
and supported by a good consideration, was valid.   The case
in the Year Books went against all contracts in restraint of
trade, whether limited or general.   The other cases, prior to
*Mitchel* v. *Reynolds*, sustained contracts for a particular
restraint, upon special grounds, and by inference decided
against the validity of general restraints.   The case of *Mitchel*
v. *Reynolds* was a case of partial restraint and the contract
was sustained.   It is worthy of notice that most, if not all,
the English cases which assert the doctrine that all contracts
in general restraint of trade are void, were cases where the
contract before the court was limited or partial.   The same
is generally true of the American cases.   The principal cases
in this State are of that character, and in all of them the par-
ticular contract before the court was sustained (*Nobles* v.
*Bates*, 7 Cow. 307; *Chappel* v. *Brockway*, 21 Wend. 157;

*Dunlop* v. *Gregory*, 10 N. Y. 241). In *Alger* v. *Thacher* (19 Pick. 51), the case was one of general restraint, and the court, construing the rule as inflexible that all contracts in general restraint of trade are void, gave judgment for the defendant. In *Mitchel* v. *Reynolds* the court, in assigning the reasons for the distinction between a contract in general restraint of trade, and one limited to a particular place, says, "for the former of these must be void, being of no benefit to either party and only oppressive;" and later on, "because in a great many instances they can be of no use to the obligee, which holds in all cases of general restraint throughout England, for what does it signify to a tradesman in London what another does in Newcastle, and surely it would be unreasonable to fix a certain loss on one side without any benefit to the other." He refers to other reasons, viz.: The mischief which may arise (1) to the party, by the loss, by the obligor, of his livelihood and the subsistence of his family; and (2), to the public, by depriving it of a useful member and by enabling corporations to gain control of the trade of the kingdom. It is quite obvious that some of these reasons are much less forcible now than when *Mitchel* v. *Reynolds* was decided. Steam and electricity have, for the purposes of trade and commerce, almost annihilated distance, and the whole world is now a mart for the distribution of the products of industry. The great diffusion of wealth and the restless activity of mankind striving to better their condition, has greatly enlarged the field of human enterprise and created a vast number of new industries, which give scope to ingenuity and employment for capital and labor. The laws no longer favor the granting of exclusive privileges, and, to a great extent, business corporations are practically partnerships and may be organized by any persons who desire to unite their capital or skill in business, leaving a free field to all others who desire for the same or similar purposes to clothe themselves with a corporate character. The tendency of recent adjudications is marked in the direction of relaxing the rigor of the doctrine that all contracts in general restraint of trade

are void irrespective of special circumstances. Indeed, it has of late been denied that a hard and fast rule of that kind has ever been the law of England (*Rousillon* v. *Rousillon*, 14 L. R., Ch. Div. 351). The law has, for centuries, permitted contracts in partial restraint of trade, when reasonable; and in *Horner* v. *Graves* (7 Bing. 735), Chief Justice TINDAL considered a true test to be "whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public." When the restraint is general, but at the same time is co-extensive only with the interest to be protected, and with the benefit meant to be conferred, there seems to be no good reason why, as between the parties, the contract is not as reasonable as when the interest is partial and there is a corresponding partial restraint. And is there any real public interest which necessarily condemns the one and not the other? It is an encouragement to industry and to enterprise in building up a trade, that a man shall be allowed to sell the good will of the business and the fruits of his industry upon the best terms he can obtain. If his business extends over a continent, does public policy forbid his accompanying the sale with a stipulation for restraint co-extensive with the business which he sells? If such a contract is permitted, is the seller any more likely to become a burden on the public than a man who having built up a local trade only, sells it, binding himself not to carry it on in the locality? Are the opportunities for employment and for the exercise of useful talents so shut up and hemmed in that the public is likely to lose a useful member of society in the one case and not in the other? Indeed, what public policy requires is often a vague and difficult inquiry. It is clear that public policy and the interests of society favor the utmost freedom of contract, within the law, and require that business transactions should not be trammeled by unnecessary restrictions. "If," said Sir GEORGE JESSELL, in *Printing Company* v. *Sampson* (19 Eq. Cas. L. R. 462) "there is one thing more than any other which public policy requires, it is that men of full age and com-

petent understanding shall have the utmost liberty of contract-
ing, and that contracts when entered into freely and voluntarily,
shall be held good and shall be enforced by courts of justice."
It has sometimes been suggested that the doctrine that con-
tracts in general restraint of trade are void, is founded in part
upon the policy of preventing monopolies, which are opposed
to the liberty of the subject, and the granting of which by
the king under claim of royal prerogative led to conflicts
memorable in English history. (But covenants of the charac-
ter of the one now in question operate simply to prevent
the covenantor from engaging in the business which he sells,
so as to protect the purchaser in the enjoyment of what he
has purchased.    To the extent that the contract prevents the
vendor from carrying on the particular trade, it deprives the
community of any benefit it might derive from his entering
into competition.    But the business is open to all others, and
there is little danger that the public will suffer harm from
lack of persons to engage in a profitable industry.    Such con-
tracts do not create monopolies.    They confer no special or
exclusive privilege.    If contracts in general restraint of trade,
where the trade is general, are void as tending to monopolies,
contracts in partial restraint where the trade is local, are
subject to the same objection, because they deprive the local
community of the services of the covenantor in the particular
trade or calling, and prevent his becoming a competitor with
the covenantee.    We are not aware of any rule of law which
makes the motive of the covenantee the test of the validity
of such a contract.    On the contrary we suppose a party may
legally purchase the trade and business of another for the
very purpose of preventing competition, and the validity of
the contract, if supported by a consideration, will depend
upon its reasonableness as between the parties.    Combinations
between producers to limit production and to enhance prices,
are or may be unlawful, but they stand on a different footing.
We cite some of the cases showing the tendency of recent
judicial opinion on the general subject.    ( *Whittaker* v. *Howe,*
3 Beav.  383 ; *Jones* v. *Lees,* 1  Hurl.  &.  N. 189 ; *Rousillon*

v. *Rousillon, supra* ; *Leather Co.* v. *Lorsont,* 9 Eq. Cas., L. R., 345 ; *Collins* v. *Locke,* 4 App. Cas., L. R., 674 ; *Oregon Steam. Co.* v. *Winsor,* 20 Wall. 64 ; *Morse* v. *Morse,* 103 Mass. 73.) In *Whitaker* v. *Howe,* a contract made by a solicitor not to practice as a solicitor "in any part of Great Britain," was held valid. In *Rousillon* v. *Rousillon,* a general contract not to engage in the sale of champagne, without limit as to space, was enforced as being under the circumstances a reasonable contract. In *Jones* v. *Lees,* a covenant by the defendant, a licensee under a patent, that he would not during the license make or sell any slubbing machines without the invention of the plaintiff applied to them, was held valid. Bramwell, J., said: "It is objected that the restraint extends to all England, but so does the privilege." In *Oregon Steam. Co.* v. *Winsor* the court enforced a covenant by the defendant, made on the purchase of a steamship, that it should not be run or employed in the freight or passenger business upon any waters in the State of California for the period of ten years.

In the present state of the authorities we think it cannot be said that the early doctrine that contracts in general restraint of trade are void, without regard to circumstances, has been abrogated. But it is manifest that it has been much weakened, and that the foundation upon which it was originally placed has, to a considerable extent at least, by the change of circumstances, been removed.

The covenant in the present case is partial and not general. It is practically unlimited as to time, but this, under the authorities, is not an objection, if the contract is otherwise good. (*Ward* v. *Byrne,* 5 M. & W. 548 ; *Mumford* v. *Gething,* 7 C. B. [N. S.] 305, 317.) It is limited as to space since it excepts the State of Nevada and the Territory of Montana from its operation, and therefore is a partial and not a general restraint, unless, as claimed by the defendant, the fact that the covenant applies to the whole of the State of New York, constitutes a general restraint within the authorities. In *Chappel* v. *Brockway (supra),* Bronson, J., in stating the

general doctrine as to contracts in restraint of trade, remarked that " contracts which go to the total restraint of trade, as that a man will not pursue his occupation anywhere in the State, are void." The contract under consideration in that case was one by which the defendant agreed not to run or be interested in a line of packet boats on the canal between Rochester and Buffalo. The attention of the court was not called to the point whether a contract was partial, which related to a business extending over the whole country, and which restrained the carrying on of business in the State of New York, but excepted other States from its operation. The remark relied upon was *obiter*, and in reason cannot be considered a decision upon the point suggested. We are of the opinion that the contention of the defendant is not sound in principle, and should not be sustained. The boundaries of the States are not those of trade and commerce, and business is restrained within no such limit. The country, as a whole, is that of which we are citizens, and our duty and allegiance are due both to the State and nation. Nor is it true, as a general rule, that a business established here cannot extend beyond the State, or that it may not be successfully established outside of the State. There are trades and employments which, from their nature, are localized ; but this is not true of manufacturing industries in general. We are unwilling to say that the doctrine as to what is a general restraint of trade depends upon State lines, and we cannot say that the exception of Nevada and Montana was colorable merely. The rule itself is arbitrary, and we are not disposed to put such a construction upon this contract as will make it a contract in general restraint of trade, when upon its face it is only partial. The case of *Oregon Steam. Co.* v. *Wisnor* (*supra*) supports the view that a restraint is not necessarily general which embraces an entire State. The defendant entered into the covenant as a consideration in part of the purchase of his property by the Swift & Courtney & Beecher Company, presumably because he considered it for his advantage to make the sale. He realized a large sum in money, and on the completion of the trans-

action became interested as a stockholder in the very business which he had sold. We are of opinion that the covenant, being supported by a good consideration, and constituting a partial and not a general restraint, and being, in view of the circumstances disclosed, reasonable, is valid and not void.

In respect to the second general question raised, we are of opinion that the equitable jurisdiction of the court to enforce the covenant by injunction, was not excluded by the fact that the defendant, in connection with the covenant, executed a bond for its performance, with a stipulation for liquidated damages. It is, of course, competent for parties to a covenant to agree that a fixed sum shall be paid in case of a breach by the party in default, and that this should be the exclusive remedy. The intention in that case would be manifest that the payment of the penalty should be the price of non-performance, and to be accepted by the covenantee in lieu of performance (*Phœnix Ins. Co.* v. *Continental Ins. Co.*, 87 N. Y. 400, 405.) But the taking of a bond in connection with a covenant does not exclude the jurisdiction of equity in a case otherwise cognizable therein, and the fact that the damages in the bond are liquidated, does not change the rule. It is a question of intention, to be deduced from the whole instrument and the circumstances; and if it appear that the performance of the covenant was intended, and not merely the payment of damages in case of a breach, the covenant will be enforced. It was said in *Long* v. *Bowring* (33 Beav. 585), which was an action in equity for the specific performance of a covenant, there being also a clause for liquidated damages, "all that is settled by this clause is that if they bring an action for damages the amount to be recovered is £1,000, neither more nor less." There can be no doubt upon the circumstances in this case that the parties intended that the covenant should be performed, and not that the defendant might at his option repurchase his right to manufacture and sell matches on payment of the liquidated damages. The right to relief by injunction in similar contracts is established by numerous cases. (*Phœnix Ins. Co.* v. *Continental Ins. Co.*,

*supra; Long* v. *Bowring, supra; Howard* v. *Woodward,* 10 Jur. N. S. 1123; *Coles* v. *Sims,* 5 De G., McN. & G. 1; *Avery* v. *Langford,* Kay's Ch., 663; *Whittaker* v. *Howe, supra; Hubbard* v. *Miller,* 27 Mich. 15.)

There are some subordinate questions which will be briefly noticed.

*First.* The plaintiff, as successor of The Swift & Courtney & Beecher Company, and as assignee of the covenant, can maintain the action. The obligation runs to the Swift & Courtney & Beecher Company, " its successors and assigns." The covenant was in the nature of a property-right and was assignable, at least it was assignable in connection with a sale of the property and business of the assignors. (*Hedge* v. *Lowe,* 47 Iowa 137, and cases cited.) *Second.* The defendant is not in a position which entitles him to raise the question that the contract with The Swift & Courtney & Beecher Company was *ultra vires* the powers of that corporation. He has retained the benefit of the contract and must abide by its terms. (*Whitney Arms Co.* v. *Barlow,* 68 N. Y. 34.) *Third.* The fact that the plaintiff is a foreign corporation is no objection to its maintaining the action. It would be repugnant to the policy of our legislation and a violation of the rules of comity to grant or withhold relief in our courts upon such a discrimination. (*Merrick* v. *Van Santvoord,* 34 N. Y. 208; *Hibernia Nat. Bank* v. *Lacombe,* 84 id. 367; Code Civ. Pro. § 1779.) *Fourth.* The consent of The Swift & Courtney & Beecher Company to the purchase by the defendant of the business of Brueggemann, did not relieve the defendant from his covenant. That transaction was in no way inconsistent therewith. Brueggemann was selling matches manufactured by the company, under an agreement to deal in them exclusively.

There are some questions on exceptions to the admission and exclusion of evidence. None of them present any question requiring a reversal of the judgment.

There is no error disclosed by the record and the judgment should, therefore, be affirmed.

All concur, except PECKHAM, J., dissenting.

Judgment affirmed.