CENTRAL FIREWORKS CO. v. CHARLTON.

(Supreme Court, Appellate Division, First Department. June 23, 1899.)

SPECIFIC PERFORMANCE—CONTRACT—CONSIDERATION.

The superintendent of a company engaged in the manufacture of fireworks assigned his stock to a new company, in accordance with its proposition to give a certain amount of its stock for a majority of the stock in the old company, without knowing that the president of the old company had agreed in his behalf that he would bind himself not to engage in the manufacture or sale of fireworks for 20 years. The exchange of stock was made with him on the same terms offered to every other stockholder, regardless of any such agreement. Before his stock in the new company was transferred to him, however, he executed such an agreement, merely on the suggestion of the president of the new company that it would be glad to have him do so. *Held*, that it was without consideration, and could not be enforced.

Appeal from special term, New York county.

Action by the Central Fireworks Company against William J. Charlton. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and O'BRIEN, JJ.

John N. Blair, for appellant.
William D. Gaillard, for respondent.

RUMSEY, J. This action is brought for the specific performance of a contract under seal made by the defendant with the plaintiff on the 27th of October, 1896, by which the defendant, "in consideration of one dollar to me paid by the Central Fireworks Company, and of the agreement on the part of that corporation to purchase from me certain shares of the stock of the Consolidated Fireworks Company of America," covenanted that for 20 years next ensuing he would not engage, either directly or indirectly, as principal, partner, shareholder, officer, agent, or employé, in the manufacture or sale of fireworks, or of materials, machinery, or appliances for the production of fireworks, in any part of the United States, except in the state of California. The contract contains other provisions, which need not be considered. It was made to appear upon the trial that after the making of this agreement, and on the 1st of January, 1898, the defendant organized, and became the president of, the Nordlinger-Charlton Fireworks Company; and there was some evidence tending to show that as the result of that competition the profits of certain

corporations, in which the plaintiff is a controlling stockholder, have seriously diminished. The learned justice at the special term decided that the plaintiff was not entitled to the specific performance of this contract, and dismissed the complaint, and from the judgment entered on that dismissal this appeal is taken.

The contract sought to be enforced in this action is clearly one in restraint of trade, because the effect of it is to prevent the defendant from engaging in the manufacture of fireworks, which is his sole business, for 20 years. In actions for the specific performance of such contracts, the courts have been for many years relaxing the strict rules which formerly obtained, until now it may be laid down as the law applicable to them that the mere fact that the contract operates to restrain one of the parties to it from engaging in a particular business for a considerable time, and within a great extent of territory, is not of itself sufficient to induce the court to refuse specific performance of it, if it appears to be reasonable with regard to the circumstances under which it was made, not oppressive in its operation upon the person to be restrained, and supported by a valuable consideration. Rousillon v. Rousillon, 14 Ch. Div. 351; Cloth Co. v. Lorsont, L. R. 9 Eq. 345, 354; Match Co. v. Roeber, 106 N. Y. 473, 483, 13 N. E. 419; Ammunition Co. v. Nordenfelt [1893] 1 Ch. 630. Whether this contract, in its operation, is oppressive to the defendant, or whether it is reasonable, in view of all the circumstances under which it was made, it is not necessary to determine. In this contract, as in all others, specific performance will not be enforced unless it be made to appear that the contract was based upon a valuable consideration; and such consideration must have been actual, and not a mere constructive consideration, such as that imported by the seal to a bond. Bisp. Eq. § 373; Pom. Spec. Perf. § 934. This case therefore will be determined solely upon the question whether or not the consideration for it was such a valuable one as would be sufficient to support a judgment for specific performance in the case of any other contract.

In April, 1896, the defendant was the superintendent of the Consolidated Fireworks Company, where he had been engaged for some time. Of that company one Thomas B. Diehl was the president. On the 20th of April, Diehl and another, calling themselves a "committee of stockholders," issued to the stockholders of the Consolidated Fireworks Company a circular proposing that a majority of the stock of that company should be transferred to a corporation to be organized for the purpose of procuring control of the manufacture of fireworks throughout the United States, and thereby enabling it to transact that business with increased profit to all concerned. This circular seems to have been sent to all the stockholders of the corporation. After that had been done, and in June, 1896, the plaintiff corporation was organized; and, at a meeting of that corporation on the 20th of June, Mr. Diehl, who was one of the directors, made a proposition for the sale of some 14,000 shares of the Consolidated Fireworks Company for a nominal consideration of something over $927,000. It appears that this proposition was typewritten. Diehl testifies that it was presented to him at the meeting of the directors; that he was told it was a matter of form, to make the purchase legal; that he

never had seen it before; that he signed it after reading it; and that he told the person who handed it to him that he had no control over the others. It purported to be a proposition on the part of Charlton and two others and Diehl to sell the 14,000 shares of the Consolidated Fireworks Company; and it contained a clause whereby, in consideration of the acceptance of the proposition and the purchase of the stock, Diehl agreed, in behalf of the persons named, that each of them and himself would execute and deliver to the Central Fireworks Company contracts whereby they should bind themselves to refrain during a period of 20 years from engaging, either directly or indirectly, in the manufacture or sale of fireworks,—the contract proposed being substantially the one which the defendant afterwards executed. There can be no doubt, upon the testimony, that this proposition was made without the knowledge of Charlton, and that he had no information with regard to it until the trial of this action. He testifies to that effect directly, and in that he is corroborated by Mr. Diehl, and there is practically no contradiction about it. The proposition was accepted by the board of directors of the plaintiff. When the stockholders' committee had sent the circular spoken of above to the stockholders of the Consolidated Corporation, they had inclosed to each one an agreement to the proposed plan of organization of the Central Corporation, and to the exchange of his stock in the Consolidated Company for stock of the new corporation upon the basis of 1 share of the common stock of the new corporation for 2 shares of the common stock of the Consolidated Fireworks Company, and 1 share of the preferred stock of the new corporation for 1 share of the preferred stock of the Consolidated Company. Whether this agreement was ever signed by Charlton does not precisely appear. He testifies that he did sign it, and Diehl testifies that he did not. But whether he did or not is a matter of not much importance. It appears that, after the acceptance by the defendant of Diehl's proposition to transfer 14,000 shares of the stock of the Consolidated Company to the plaintiff, the Washington Trust Company was selected by the plaintiff to be its agent to carry into effect the consolidation; and thereupon the plaintiff sent to the Washington Company instructions with regard to the transfer of the stock, directing it to receive all stock of the several companies which was to be purchased by the Central Company, and to give to the persons presenting stock receipts of the Washington Trust Company, calling for the number of shares of the Central Fireworks Company to be issued in exchange for the shares thus deposited, in the ratio specified in the instructions, to be delivered when the stock of the Central Fireworks Company was issued. Blank receipts for that purpose were issued to the Washington Company, and on the 11th of July, 1896, Charlton delivered to it his stock in the Consolidated Company, and received in return two receipts,—one acknowledging the receipt of 7 shares of the common stock of the Consolidated Company, to be exchanged for common stock of the Central Fireworks Company at the rate of 2 shares of the former stock for 1 share of the latter; certificates, when issued, to be delivered to the said William J. Charlton upon the surrender of the receipt. Another certificate was given to Charlton of the deposit by him of 3 shares of the pre-

ferred stock of the Consolidated Fireworks Company to be exchanged for 3 shares of the preferred stock of the Central Fireworks Company; the receipts to be delivered at the same time and under the same conditions.  Charlton sold his stock in the Consolidated Fireworks Company upon precisely the same terms as every other stockholder.  When he delivered it to the Washington Trust Company, and received from them a receipt for it, so far as he was concerned, he had done all that was necessary to entitle him to receive the stock of the Central Fireworks Company when that should be issued. The contract in that regard was complete, and he could have enforced the performance of it at any time after the Central Company's stock had been issued, if the shares had not been transferred to him.  These shares, however, although issued in September, 1896, do not seem to have been transferred to Charlton until the month of November.  On the 27th day of October, 1896, Charlton executed the contract in suit. Mr. Diehl was at that time the president of the Central Fireworks Company.  Before Charlton executed this contract, there was some conversation between himself and Diehl in regard to it.  Charlton expressed an unwillingness to sign it, because, as he said, he received nothing in particular for it.  Diehl said to him that they would be glad to have him sign it, but, after all, it made very little difference whether he did or not; that he could do as he saw fit about it; that he (Diehl) had signed a similar contract, and that other persons named by him had also signed it; that he would be glad to have Charlton sign it, but he did not think it was binding.  After that conversation, Charlton signed the contract.  At the time of signing it, he received no consideration for it.  He was at that time superintendent of the Consolidated Fireworks Company, and he retained that position under the same pay and upon the same terms, until he saw fit to resign it, in December, 1897, upon a threatened decrease of salary.  But his retention of that position was not in any way a condition of his signing the paper in suit.  As to that paper, he received nothing whatever.  The evidence is that he not only had at that time a binding contract, which he could enforce, to deliver his shares of stock of the Consolidated Fireworks Company to the plaintiff, but that nobody suggested that, as a condition of receiving the stock which the Central Company had agreed to deliver him, he should execute this contract, or do any other thing than he had already done. The evidence of Mr. Diehl upon this point, and of the defendant himself, is entirely undisputed.  It is very clear that there was no consideration whatever, valuable or otherwise, in fact given to Charlton for the execution of this paper.

For that reason, without considering any of the other objections to it, we are of the opinion that the judgment of the learned justice at the special term was correct, and must be affirmed, with costs to the respondent.  All concur; PATTERSON, J., in result.