(37 Misc. Rep. 101.)

### A. BOOTH & CO. v. SEIBOLD et al.

(Supreme Court, Special Term, New York County.  January, 1902.)

**1. CONTRACT—SALE OF BUSINESS—RESTRAINT OF TRADE.**
  A contract for the sale of a business of selling fish and its good will, limited as to time and territory, and made for a valuable consideration, restraining the vendor from further prosecution of the business, is not in general restraint of trade, nor does it tend to create a monopoly.

**2. SAME.**
  That an assignee of a contract for the sale of the business of selling fish and its good will subsequently purchased the business and good

will of rival dealers in fish, and made restrictive contracts with them, does not make the original contract invalid.

**3. SAME—BREACH—INJUNCTION.**
Where the vendor of a business of selling fish and its good will had agreed not to further prosecute the business, afterwards formed a corporation with other persons who either knew of such contract or had made similar contracts with the vendee, and the corporation continued in the fish business, the vendor and the corporation will be restrained pendente lite from continuing the business, and persons not parties to the original contract will be restrained from carrying on the fish business in connection with the defendants.

Action by A. Booth & Co. against William H. Seibold and others. Motion to continue injunction pendente lite granted in part.

Zabriskie, Burrill & Murray, for the motion.

Henry L. Maxson, opposed.

SCOTT, J. The numerous and interesting questions raised upon this motion to continue the injunction pendente lite invite a more extended discussion than circumstances will permit me to indulge in. I must therefore content myself with a brief and general statement of the conclusion at which I have arrived after an exhaustive examination of the affidavits and briefs submitted. That the agreement sought to be enforced is not void as being in general restraint of trade is, in my opinion, quite clear. It was expressly limited both as to its territorial scope and as to the length of time during which it is to be operative. Similar contracts, often comprising much wider and more sweeping restrictions, have been upheld by the courts of this state. Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; Leslie v. Lorillard, 110 N. Y. 533, 18 N. E. 363, 1 L. R. A. 456; Fireworks Co. v. Charlton, 42 App. Div. 104, 58 N. Y. Supp. 900; Tode v. Gross, 127 N. Y. 485, 28 N. E. 469, 13 L. R. A. 652, 24 Am. St. Rep. 475; Wood v. Whitehead Bros. Co., 165 N. Y. 545, 59 N. E. 357. The plaintiff paid a large price for the property and good will of the Buffalo Fish Company, and the restraint contemplated by the contract as to the further prosecution of the same business by that company and its individual stockholders is certainly no greater than is reasonably necessary to afford a fair protection to the purchaser. Nor is the contract void as tending to create a monopoly. The business concerning which the contract is made is that of dealing in and selling fish, a commodity which is practically limitless, and to be had for the catching not only in the sea, but in all of our fresh-water lakes and rivers. It does not appear that the attempted expansion of the plaintiff's business by purchasing and absorbing the stock in trade and good will of rival dealers was in any sense a combination to control the sale and enhance the prices of food fishes. It does not, therefore, fall within the prohibition of the anti-monopoly statutes. U. S. v. Joint Traffic Ass'n, 171 U. S. 505, 19 Sup. Ct. 25, 43 L. Ed. 259; Dueber Watch-Case Mfg. Co. v. E. Howard Watch & Clock Co., 14 C. C. A. 14, 66 Fed. 645. I am quite unable to discern any analogy between the contract involved in this action and those condemned by the courts of this state in the cases cited by defendants. Cummings

v. Stone Co., 164 N. Y. 401, 58 N. E. 525, 52 L. R. A. 262, 79 Am.
St. Rep. 655; Judd v. Harrington, 139 N. Y. 109, 34 N. E. 790;
People v. Milk Exchange, 145 N. Y. 267, 39 N. E. 1062, 27 L. R. A.
437, 45 Am. St. Rep. 609; People v. Sheldon, 139 N. Y. 251, 34 N.
E. 785, 23 L. R. A. 221, 36 Am. St. Rep. 690.  It has been said by the
court of appeals that the anti-monopoly law of this state is "little
more than a codification of the common law upon the subject."
In re Davies, 168 N. Y. 101, 61 N. E. 118.  Such an agreement as
the plaintiff seeks to enforce is not deemed to be one closing the
field of competition except as to the particular parties affected by it
(Wood v. Whitehead Bros. Co., supra), nor is its validity affected, so
far as concerns the parties to it, by the fact that the plaintiff has pur-
chased the business of other dealers, and has made similar contracts
with them.  Potteries Co. v. Oliphant, 58 N. J. Eq. 508, 43 Atl. 723,
46 L. R. A. 255, 78 Am. St. Rep. 612.  I do not deem it necessary
to consider at length the claim that the agreement, so far as regards
the restriction upon carrying on the business, was without considera-
tion, or was induced by fraudulent or false representations.  I find
no sufficient support for this contention in the affidavits.  The fact
that the defendants have organized a corporation to carry on busi-
ness in violation of Seibold's agreement with plaintiff's assignor will
not avail them as a defense to this action.  In enforcing such an
agreement a court of equity looks at the substance, and not merely
at the form.  All the parties who joined with Seibold in organizing
the Seibold-Stocker Company either had executed similar restrictive
contracts, or were in such a position that they must have known of
the terms of the contract which he had executed.  So far as they
attempt to deny such knowledge, their denials must be considered
as incredible, and I can only regard the organization of the defend-
ant corporation as a device to evade the restrictive contract.  Under
these circumstances the injunction properly runs against the corpo-
ration and the corporators other than Seibold, as well as against
him.  Beal v. Chase, 31 Mich. 490.  That William Vernon Booth,
with whom Seibold originally contracted, could lawfully and effec-
tually assign the contract, with the business, to the plaintiff, is un-
doubted.  Francisco v. Smith, 143 N. Y. 488, 38 N. E. 980.  Upon
the case as disclosed by the affidavits I am of opinion that the tem-
porary injunction should be continued in its present form and scope
against the defendants Seibold and the Seibold-Stocker Company.
The other defendants, however, were not parties to the contract
with the Buffalo Fish Company, and are not restrained by the terms
of that contract from engaging in the fish business.  Having knowl-
edge of that contract, it is unlawful and inequitable for them to asso-
ciate in the business with Seibold, and thereby assist him in violating
the contract.  They are, however, at liberty, so far as the contract
in suit is concerned, to engage in the business so long as they do
not so engage in conjunction with Seibold.  If some of them are for-
bidden by another and different contract to engage in business in
this city, they must be enjoined, if at all, in an action brought to
enforce that contract.  In the present action we are concerned only
with the contract with the Buffalo Fish Company.  So far, there-

fore, as concerns the defendants Stocker, Smith, Davis, and Edson, the injunction will be modified so as to restrain them from engaging in the business in connection with the defendant Seibold, or the Seibold-Stocker Company, or wherein the said Seibold may be interested. As to the defendants Seibold and the Seibold-Stocker Company, the injunction is continued in full force. The interests involved are very large, and the facts may so develop upon the trial as to put a different complexion upon the case. The plaintiff should therefore give an undertaking in the sum of $5,000, conditioned for the payment of such damages as the defendants may sustain by reason of the injunction if the court finally decides that the plaintiff was not entitled thereto.

Ordered accordingly.