JOHN W. ALDEN, Respondent, *v.* WILLIAM WRIGHT and Others, Appellants.

First Department, December 29, 1916.

Contracts — suit in equity to enjoin violation of covenants by vendee in partial restraint of trade — liability of stockholders of corporation under agreement by its predecessor.

In a suit to enjoin the defendants from violating two agreements, in writing, one made between the plaintiff and a Massachusetts corporation and the other made on the same day between the plaintiff and the president, a majority stockholder of said corporation, it appeared that said corporation was engaged in the business of making and selling cake, principally in the State of New York, but not in the New England States; that plaintiff, who was a large stockholder, was engaged in like

business in New England; that the president of said corporation decided to organize a New York corporation for the purpose of taking over all the assets, etc., of his corporation and requested plaintiff to consent, which he refused to do; that by the agreement between the plaintiff and the Massachusetts corporation it was agreed that the plaintiff would sell his stock to the president of said corporation, and that it would change its name and would not, after a certain period, use certain trade names, and would release and restore them to the plaintiff, and would not "manufacture or sell in or ship into any of the New England States any cake of any kind." The agreement with the president of the Massachusetts corporation contained no reference to the agreement with said corporation, but recited the purchase by the president of plaintiff's stock, and contained agreements by the president to form a New York corporation to carry on the cake business in New York and to take over the property and assets of the Massachusetts corporation, and also contained similar restrictive covenants. The alleged violations and threatened violations of the agreement are shipping into the New England States for sale, and selling therein cake and cake products, and an accounting is demanded of the profits realized on such sales.

*Held,* that the allegations that the defendant New York corporation assumed the obligations of the Massachusetts corporation contained in its agreement with the plaintiff, standing alone, would not constitute a sufficient allegation of the facts showing such assumption, but taken with other allegations showing that the defendant corporation was organized to succeed the Massachusetts corporation, and that it did in fact become its successor in business by taking over all of its assets, and by issuing therefor to the stockholders of the Massachusetts corporation and *to them only* its entire capital stock, it is sufficiently shown that it acquired such assets burdened with the obligations of the Massachusetts corporation.

The stockholders of the New York corporation having all been stockholders of the Massachusetts corporation are chargeable with knowledge of the agreements, and the New York corporation having purchased the assets and succeeded to the business of the Massachusetts corporation should be bound thereby.

The agreements in question are not void as being in restraint of trade.

Covenants which are ancillary or incident to a lawful contract, although they may be in *partial* restraint of trade, are valid if founded on a good consideration and limited to reasonable protection of the covenantee. This is so, even though the vendor is not parting with the good will of the business and they are made by the *vendee.*

McLAUGHLIN and DOWLING, JJ., dissented.

APPEAL by the defendants, William Wright and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 1st day of June, 1916, overruling

their demurrer to the complaint and granting plaintiff's motion for judgment on the pleadings.

*William F. Goldbeck,* for the appellants.

*Henry T. Hornidge* [*Alfred W. Kiddle* and *Wylie C. Margeson* with him on the brief], for the respondent.

LAUGHLIN, J.:

After issue was joined by a joint demurrer to the complaint interposed by all the defendants on the ground that it fails to state facts sufficient to constitute a cause of action, plaintiff moved for judgment on the pleadings for the relief demanded in the complaint. The order overrules the demurrer and grants the motion with leave to defendants to withdraw their demurrer and to serve an answer, on default of which it gives plaintiff leave to enter an *interlocutory* judgment for the relief demanded in the complaint.

This is a suit in equity to enjoin defendants from violating two agreements in writing, one made between the plaintiff and the Berwick Cake Company, a Massachusetts corporation, on the 4th day of April, 1912, designated Exhibit "A," and the other, designated Exhibit "B," made on the same day, between the plaintiff and the defendant William Wright, in which it is recited that the agreement was made by Wright "both individually and as president of Berwick Cake Company," but which was signed by Wright individually only.

The alleged violations and threatened violations of the agreement are shipping into the New England States for sale and selling therein cake and cake products, and an accounting is demanded of the profits realized on such sales.

It is alleged that the Berwick Company was engaged in the business of making and selling cake and cake products principally in the State of New York, but not in the New England States, and that plaintiff, who was a large stockholder in the company, was engaged in like business in the New England States; that the defendant William Wright, through ownership of a majority of the capital stock of the Berwick Company, was in control of that company, and on the 4th day of April, 1912, he *decided* to organize a new corporation under

the laws of the State of New York "for the purpose of taking over all of the assets, business, good will, liabilities and obligations"' of the Berwick Company, and requested plaintiff to consent thereto, but that plaintiff was opposed to such action and that thereupon negotiations were opened between said Wright and the Berwick Company and the plaintiff for the purchase of plaintiff's stock in the Berwick Company resulting in the execution of said Exhibit "A," which was duly authorized by a resolution unanimously adopted by the owners of all the stock of the Berwick Company; that simultaneously with the execution of Exhibit "A" the plaintiff and said Wright executed Exhibit "B." The plaintiff alleges that pursuant to Exhibit "A" and Exhibit "B" he sold and delivered to the defendant William Wright all his stock in the Berwick Company.

It is recited in Exhibit "A" that the Berwick Company is desirous of selling its business and assets to a corporation to be organized under the laws of this State for that purpose or to some other person, firm or corporation; that plaintiff *as a stockholder* is opposed to such action and has expressed his intention of voting against the same and of offering his stock to the company pursuant to the laws of its incorporation; that said William Wright, the president of the company, has individually agreed to purchase the plaintiff's stock and thereby relieve the company from the necessity of purchasing it and that in consideration of the premises it was agreed that the plaintiff would not oppose such transfer or sale of the assets and business of the corporation and would not require the company to take his stock, but would sell the same to said Wright "at the price and on the terms and conditions to be agreed upon between him and said Wright" and that the company would change its name by eliminating the word "Berwick" therefrom and would not after a specified period use certain trade names and would release and restore them to plaintiff and reinvest him, so far as the company was concerned, with the sole and exclusive right thereto and would not "manufacture or sell in or ship into any of the New England States any cake of any kind" and would not use any label or any phrase or form of advertising then or theretofore used by the plaintiff.

It will be observed there was not in Exhibit " A " any express agreement on the part of the company with respect to restricting the territory within which any new corporation formed to take over its business was to be at liberty to transact business, but in view of the fact that it was made in contemplation of the formation of the new company to take over its business an agreement to restrict the territory within which the new company was to do business is fairly implied, if indeed the covenants were not in fact made for such new company. Exhibit " B " contains no reference to Exhibit " A." It recites the purchase by Wright of plaintiff's stock in the Berwick Company; an agreement by plaintiff, if he should decide within a specified period to engage in the cake business in New York, to purchase Wright's stock in the Berwick Company if it should then be doing business as a Massachusetts corporation or to purchase Wright's stock in any corporation formed under the laws of New York to take over the property and assets of the Berwick Company on specified terms provided Wright wished to sell, and it contained agreements by Wright to form a New York corporation to carry on the cake business in New York and to take over the property and assets of the Berwick Company, and agreements on his part with respect to restrictions concerning the name of such new corporation, and that certain trade names should not be used by it, and that neither the Berwick Company nor any new corporation in which Wright should be directly or indirectly interested would thereafter "manufacture or sell in or ship into any of the New England States so-called any cake of any kind," and that neither the Berwick Company nor said new corporation nor Wright individually in connection with any business in which he might thereafter be directly or indirectly interested should use any label then or theretofore used by the plaintiff in his business or by the Berwick Company or any phrase or form of advertising used by plaintiff, and an agreement by Wright that the name of the Berwick Company should be changed by eliminating the name " Berwick " and that said name should not be used by the new corporation or others after a specified period, and a further agreement by Wright to cause the capital stock of the new corporation " to be voted so as to carry into effect the foregoing

obligations on his part and so as to fully restore to and vest in " the plaintiff the sole and exclusive right in and to the use of specified trade names, trade marks and labels. Exhibit " B " contains no covenant or agreement in form on the part of the Berwick Company and there is no allegation that its execution was authorized by the company.

There is plainly here alleged a cause of action at law against William Wright, but the complaint is framed in equity and there is no allegation that he *individually* has done or is doing or threatens to do any business in violation of his agreement with the plaintiff. The business which it alleged constitutes a violation of the agreement has been done and is being done by the defendant company, which is a New York corporation alleged to have been organized by Wright on the 27th day of May, 1912, " for the purpose of taking over the assets, business and good will " of the Berwick Company. It is alleged generally that *pursuant* to the resolution of the stockholders of the Berwick Company which authorized Exhibit A and " in pursuance of said agreements " the Berwick Company transferred all its assets, property, good will and business to the defendant corporation, and that the latter " assumed all of the liabilities and obligations " of the Berwick Company " including the obligation of said contract between plaintiff and said Berwick Cake Company dated April 4, 1912 (Exhibit A, annexed hereto)." It is further alleged that all of the stockholders of the defendant company were stockholders of the Berwick Company and that all its officers were officers or stockholders of the Berwick Company; that said William Wright became the president and general manager of the defendant company and through stock ownership controls it; that the only assets and business of the defendant company at the time of its incorporation were those acquired from the Berwick Company; and that upon such transfer to the defendant company the Berwick Company went out of business and the defendant company became and is its successor in business.

The plaintiff does not allege that the defendants have sold to any of his customers, but he sufficiently alleges, I think, that the extension of the business of the defendant corporation into the territory in which he was doing business has resulted and

will result in such a restriction of his business opportunities as to warrant injunctive relief if the agreements are valid and are binding on the defendant corporation. The allegation that the defendant corporation assumed the obligation of the Berwick Company, contained in Exhibit A, standing alone, would not constitute a sufficient allegation of the facts showing such assumption; but taken with the other allegations showing that the defendant corporation was organized to succeed the Berwick Company and that it did in fact become its successor in business by taking over all of its assets, business and good will and by issuing therefor to the stockholders of the Berwick Company and *to them only* its entire capital stock, it is sufficiently shown, I think, that it acquired such assets burdened with the obligations of the Berwick Company.

As between the plaintiff and the Berwick Company, Exhibit A recites a sufficient consideration for its relinquishing its right to do business in the New England States. It could have been compelled to take and pay for plaintiff's stock before transferring its business to a new corporation, and by the agreement on its part that it would not do business in the territory in which plaintiff was conducting business, but would leave that limited field to him as it had theretofore, it was relieved of its obligation to take and pay for his stock in accordance with the laws of Massachusetts. There is also much force in the contention that Exhibits A and B should be read together, and that they were both binding on the Berwick Company, particularly in view of the agreement contained in Exhibit A that the plaintiff's stock was to be sold to Wright " on the terms and conditions to be agreed upon between him and said Wright," and of the further fact that it is recited in Exhibit B that it is made by Wright as president of the Berwick Company as well as individually. In the circumstances the stockholders of the defendant company having all been stockholders of the Berwick Company, are chargeable with knowledge of these agreements, and the defendant corporation having purchased the assets and succeeded to the business of the Berwick Company should be deemed bound thereby (*Rogers* v. *N. Y. & T. L. Co.*, 134 N. Y. 197. See, also, *Bommer* v. *American Spiral, etc., Hinge Mfg. Co.*, 81 N. Y. 473; *Mahler Company* v. *Mahler*, 160 App.

Div. 548; *Booth & Co.* v. *Seibold*, 37 Misc. Rep. 101), unless as claimed by appellants, the agreements are void as being in restraint of trade.

I am of opinion that the agreements were not void. There had been no competition between plaintiff and the Berwick Company. It does not appear whether that was owing to an express or implied agreement between them, but that is not material. The other stockholders of the Berwick Company were all desirous of forming a new company to succeed to its business. That they could not do unless the company acquired and paid for plaintiff's stock in accordance with the laws of Massachusetts, and that the company desired to avoid; and it was avoided by these agreements by which the Berwick Company and its principal stockholder, as an inducement to plaintiff to agree upon terms of sale of his stock to Williams, plainly intended to agree that the operations of the new company would be limited, as were those of the Berwick Company, to territory other than the New England States. It was, I think, competent for the plaintiff to exact that as a reasonable restraint or restriction on the business of the company to which he was, in effect, selling his stock and thereby losing all right to a voice in the management of its affairs by which he might have protected his own business from competition with the business of the corporation in this limited territory. The agreements were neither designed to nor did they give the plaintiff a monopoly of the cake business in New England, nor were they designed to effect a general restraint of trade. They merely constituted a limited restriction on the part of the purchaser of plaintiff's stock for the protection of his established business in a territory in which the purchaser had not competed with him, and, therefore, I think, they fall fairly within the principle of the decisions holding that covenants which are ancillary or incident to a lawful contract, although they may be in *partial* restraint of trade, are valid if founded on a good consideration and limited to reasonable protection of the covenantee, and I think this is so even though the vendor is not parting with the good will of the business and they are made by the *vendee*, although such covenants are ordinarily made by the vendor, and most of the adjudicated cases have consequently arisen

with respect to covenants by vendors. (See *Pabst Brewing Co.* v. *Sloane*, 155 App. Div. 580; *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; *Leslie* v. *Lorillard*, 110 id. 519; *Hodge* v. *Sloan*, 107 id. 244; *Matter of Attorney-General*, 124 App. Div. 401; *Metropolitan Opera Co.* v. *Hammerstein*, 162 id. 691; *United States* v. *Addyston Pipe & Steel Co.*, 85 Fed. Rep. 271; affd., *sub nom. Addyston Pipe & Steel Co.* v. *United States*, 175 U. S. 211; *Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 id. 373.)

The order should, therefore, be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., and DAVIS, J., concurred; McLAUGHLIN and DOWLING, JJ., dissented.

Order affirmed, with ten dollars costs and disbursements.