WIRTH & HAMID FAIR BOOKING, INC., and Another, Appellants,
v. FRANK WIRTH and Another, Respondents.

First Department, February 23, 1934.

*Samuel Seabury* of counsel [*Arthur Hutter* with him on the brief; *Hutter & Rosenbloom*, attorneys], for the appellants.

*Jeremiah T. Mahoney* of counsel [*A. L. Geilich*, attorney], for the respondents.

MARTIN, J. This litigation involves the construction of a restrictive covenant contained in a written agreement. The acts which the plaintiffs, appellants, claim constitute a breach thereof are admitted and have been so found by the court at Special Term. The first question for determination, therefore, is whether they constitute violations of the restrictive covenant. If that question is answered in the affirmative, the plaintiffs contend that the judgment appealed from must be reversed; if, on the other hand, it is held that the contract as written does not prohibit such acts, the second question presented is whether the omission of such prohibition was by a mutual mistake which would entitle the plaintiffs to a reformation of the contract.

Wirth & Hamid Fair Booking, Inc., one of the plaintiffs herein, is engaged in the business of booking entertainers to perform at fairs, parks, carnivals and other places. The stock of this company was owned or controlled by George A. Hamid and the defendant Frank Wirth. On or about June 1, 1931, a written agreement was executed by the terms of which the plaintiff Ralph A. Hankinson, acting for Hamid, agreed to buy the stock which stood in the names of the representatives of Wirth. By the agreement, the stock so purchased, and a series of promissory notes representing the purchase price, were placed in escrow with Wirth's attorney, as trustee, to be delivered by him in accordance with the provisions of the agreement, upon the happening of specified contingencies. All notes which fell due prior to the institution of this suit were fully paid. The attorney still holds some of the notes and for that reason has been made a party defendant.

Subsequent to the execution of the agreement and within the time and in the territory covered by the restrictive covenant, the defendant Wirth, on several occasions, attempted to book circuses, under which booking, entertainers were to perform at parks and fairs, and did book and supply such entertainers to the Maryland State Fair and Agricultural Society of Baltimore, at a fair at Timonium, near Baltimore.

The complaint alleges that the defendant Wirth breached the restrictive covenant contained in the " sixth " paragraph, subdivisions " A " and " B " of the contract, in that he attempted to book and effected the booking of a circus at various parks and

fairs. These provisions of the agreement are as follows: "The party of the first part, as an incentive and inducement to the party of the second part to so purchase the aforementioned stock so owned by the parties of the third and fourth parts respectively in the party of the fifth part herein, does hereby specifically agree:

"A. That for the term or period of seven years continuously from the date hereof, he shall not and will not, either directly or indirectly, engage in or embark upon that branch of the show and/or agency business specifically characterized, known and referred to in the following manner, to-wit, the booking and/or supplying of theatrical artists and/or entertainers of any kind or character, whose services are to be performed in any fair, park, celebration, pier, carnival, circus (except as hereinafter provided), style show or pageant, fireworks at parks and/or fairs, auto races at fairs, or any of them, which restriction shall not only apply to his individual efforts, but that he shall not in any wise be or become, either directly or indirectly, associated with any individual or individuals, concern or concerns, partnership or partnerships, or corporation or corporations which may at any time during this period be engaged in such bookings for such place or places or any of them. The restrictions contained in this subdivision shall only apply to the States of Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Delaware, Pennsylvania, West Virginia, Virginia, Maryland, North Carolina, South Carolina, Georgia and Florida in the United States of America, also the Maritime Provinces of Canada; the Province of Quebec, Canada, and that portion of Ontario east of an imaginary line running due north from Windsor, Ontario, Canada. Notwithstanding the restrictive covenants contained in this subdivision, the party of the first part herein, however, shall have the right and privilege to conduct, operate, control, book and engage theatrical artists for one circus and/or specialty show in any of the States and provinces enumerated in this subdivision during the months of November, December, January, February, March and April of each year, up to and including the 30th day of April, 1938, and the said party of the first part shall have the right and privilege to conduct, operate, control, book and engage theatrical artists for two circuses and/or specialty shows in any of the States and provinces enumerated in this subdivision during the months of May, June, July, August, September and October in each year, up to and including the 31st day of May, 1938."

Subdivision "B" is as follows: "B. For the term or period of seven years continuously from the date hereof the party of the first part agrees that he shall not attend any Park Conventions

and/or Meetings and/or Fair Conventions or Meetings within the territory restricted by this agreement. But should the party of the first part herein attend any such Conventions and/or Meetings either prior to or during the holding thereof, and during such attendance shall do nothing but attempt to and/or succeed in booking circuses and/or specialty shows such as are permitted by this agreement, and/or attempt to and/or succeed in becoming proprietor, manager, director, supervisor, lessee and/or licensee of any Fairs or Parks and/or attempt to and/or succeed in obtaining concessions for selling and/or renting of all kinds of merchandise and paraphernalia not restricted by the terms of this agreement, and/or attempt to or succeed in securing concessions for the sale, renting and/or operating riding devices, either mechanical or otherwise, which are to be sold, rented, operated or used without performers necessary for their exhibition, and that performers and/or special attractions of any kind may not be used in connection therewith; and/or attempt to and/or succeed in securing any and all other kinds of concessions other than those which are restricted by the terms of this agreement, provided and upon condition that such concessions be used and operated without performers necessary for their exhibition or use, and that performers or special attractions may not be used in connection therewith, then and in each of such an event or events it is understood and agreed by and between the parties herein that such appearance of the said party of the first part at such times and at such places shall not be deemed or construed to be breaches and/or violations of the restrictive covenants contained in this subdivision.''

The complaint sets forth that if the acts complained of were not a breach of the terms of the contract, it was the intention of the parties at the time of the making of the contract that such acts should be a breach. The plaintiffs by reason thereof seek a reformation of the contract so that such acts shall be considered a breach and an injunction restraining the defendant Wirth from further violating the terms thereof. In the alternative, plaintiffs ask that, if the contract be reformed, the defendant Wirth be restrained from continuing such acts and that the moneys and notes held by defendant Maurice W. Monheimer be returned to the plaintiffs. We are of the opinion that there is no need for a reformation of the contract. By its terms in clear language it prohibits the acts complained of by the plaintiffs.

In his answer defendant Wirth admits the making of the contract, admits the attempt to book or the booking of his circus, but denies that such booking or attempt to book was restricted by the terms thereof. He further denies that it was the intention

of the parties at the time of the making of the contract to limit or restrict the defendant Frank Wirth in the booking of a circus or two circuses. The answer asks that the complaint be dismissed. On a previous appeal this court affirmed the Special Term which denied plaintiffs' motion for an order for judgment on the pleadings under rule 112 of the Rules of Civil Practice, and held that there was a question of fact to be determined upon a trial. (237 App. Div. 808.) Upon that appeal we did not construe the provisions of the contract as contended by the respondents.

The best evidence of the purpose of the contract is shown by the construction thereof given by the defendant Wirth, who repeatedly stated, and several times wrote, that he was prohibited by its terms from booking circuses at fairs or parks.

The clauses of the covenant above set forth, when read together, mean that the defendant Wirth may book entertainers for a circus only if the circus is to be performed at some place other than a fair or park. In several instances that was admitted by the defendant Wirth. The right given to him by the exception to the restrictive covenant to book artists for one circus in the winter and two in the summer, is in no way inconsistent with the express prohibition against the booking of artists whose services are to be performed at any fair or park, because the excepted right may be exercised in a wide field without violating in anywise the earlier prohibition against appearance in fairs or parks.

It is pointed out by appellants that all circuses are not held in fairs, parks or any of the other places mentioned in the restricted covenant. They are held in armories, theatres, arenas, such as Madison Square Garden, vacant lots and places not within the restriction. It was not only by the language of the contract but the spirit thereof, that the restrictive covenant prohibited the booking of entertainers for exhibitions at fairs, parks and other places therein expressly specified, leaving the defendant free to book entertainers individually or in aggregations at any other place.

The defendant Wirth, while in the employ of the plaintiff for many years, created close relations and contacts with proprietors and operators of exhibitions, and plaintiffs' only asset was the good will so created, which the purchaser of Wirth's stock received for his $93,375. It was only natural, therefore, upon purchasing defendant's interests in the business that the purchaser should protect that good will by prohibiting the seller from furnishing entertainers in competition with his business. If this is not so, then the contract would be of little or no value to the purchaser of Wirth's interest.

At or about the time the negotiations which resulted in the

contract here under consideration were commenced, the defendant Wirth became interested in a circus known as "St. Leon Bros. Circus." That show was not exhibiting at fairs or parks, and defendant Wirth wanted to continue with it. If the restrictive covenant had no exceptions therein, he would have been prevented from booking performers for his circus, and, therefore, would have been unable to operate the circus, not only at fairs and parks but at any place within the restricted territory.

It must be borne in mind that, because of the relation of the parties and the purpose to be attained, there would have been no necessity for prohibiting defendant Wirth from booking entertainers whose services were to be performed at a park or a fair, and at the same time not prohibit him from booking a whole aggregation of such performers at a park or a fair, by calling it a circus.

The only construction which we believe may be given the restrictive covenants in this contract is that the defendant was given the right to book entertainers for one circus in the winter and two in the summer, provided, however, the circus was not shown at a fair or a park and thus conflict with plaintiffs' rights.

The respondent Wirth contends that the provision in subdivision "B" of the restrictive covenant permitting him to book "circuses and/or specialty shows such as are permitted by this agreement," authorized him to book circuses at fairs or parks. If that be so, it is difficult to comprehend why he sent the telegram from Binghamton, N. Y., to his attorney, in which he stated, "Under your agreement I * * * cannot approach fair men in any capacity." It is clear from this telegram that respondent Wirth understood that the contract prohibited him from having contact with fair men "in any capacity"— a prohibition which could not have existed if the exception authorized him to book circuses at fairs. The telegram above referred to is as follows: "Positively have agreement rewritten appertaining my not attend convention or meeting. Positively will have to read my refraining attending in capacity of booking agent. Instance happens right now. I have made arrangements to sell *circus seats* and rent same fair grounds. Under your agreement *I am not permitted solicit that business and cannot approach fair men in any capacity.* Positively will not agree to that. You can drop the whole matter unless this agreed to and clause stands as originally written *exempting me from attending convention or meeting only capacity booking agent.*"

In the above telegram it will be noted that respondent Wirth requested no change in the agreement in so far as the prohibition against booking at fairs was concerned. It is very apparent that what he did seek was a change in the contract so that he would

have the right to deal with fair men for purposes other than bookings. As plaintiff had no objection to granting respondent Wirth the right to deal with fair men in this limited capacity, subdivision " B " of paragraph " sixth " of the contract was modified in the form in which it now reads, whereby Wirth was given the additional right to attend fair and park meetings and conventions *to sell paraphernalia and mechanical devices in connection with which no performers are required.* The restrictive covenant against booking performers at parks and fairs, and the exception in favor of circuses " such as are permitted by this agreement," remain precisely as they were at the time respondent Wirth telegraphed his attorney.

After the contract was executed, the individuals Frank Wirth and George Hamid jointly sent out a notice to the circus profession, as follows: " The undersigned wish to announce to the profession that Frank Wirth, having determined to devote his time *to other activities*, has withdrawn from Wirth & Hamid Fair Booking, Inc., which firm will continue under the same title as heretofore, under the Management and Directorship of George Hamid."

There is no question that the " activities " of the Wirth & Hamid Fair Booking, Inc., was the booking of attractions mainly at fairs and parks, nor is there any dispute that Frank Wirth then had a circus which he was permitted to continue to operate. It is clear, therefore, that the announcement that Frank Wirth had determined to devote his time to " other activities " meant that he was going to cease booking circuses at fairs and parks.

His attorney stated his position as follows: " There is no question that we got out of the Fair booking business, if your Honor please." Several impartial witnesses testified that the respondent Frank Wirth admitted to them that his contract prohibited him from booking a circus at a fair or a park. The importance of this testimony would warrant a more extended consideration thereof, if we deemed it necessary to add to that already adverted to or hereafter set forth. The documentary evidence offered on the trial also sustained the contention of the appellants.

Under date of August 14, 1931, Frank Wirth wrote Charles Ross, Canadian National Exhibition, Toronto, Ontario, Canada, as follows:

" Dear CHARLIE: I hate to bring you into any controversy appertaining to my business relations with Hamid. My agreement with Hamid is a very specific one, that is, *I am not to solicit business with any Park or Fair Manager*. I believe it is Hamid's purpose to try and secure a letter from you, stating that I have spoken to you about the acts, or something to that effect in Cleveland, with a view of piling up some evidence against me."

Samuel B. Russell testified that respondent Wirth told him that the circus business had not been profitable, and that he could not book a circus for fairs. He said: " Q. Did you suggest to him in August, 1931, that he book his circus at Fairs? * * * A. Yes. Q. What did he say? A. He said to me that he was not permitted to do such a thing under the dissolution contract that he had with George Hamid. Q. Did you see him in February, 1932, at Lewiston? A. Yes, he called at my residence. Q. At that time did he say to you that he was having the contract examined by lawyers? A. He wanted to sell me the circus for the Fair in 1932 and I said, ' Why, I thought you told me last Fall you were not allowed to sell the circus to Fairs and Parks.' He said, ' Well, I am having the contract examined by lawyers, with the anticipation of finding some escape; and if you sign a contract with me, I don't want you to exploit it, or give it any publicity at the present time, until I am definitely sure that I can do such a thing.' "

William B. Colyer, vice-president of the Cobleskill Agricultural Society, which conducted the fair at Cobleskill, N. Y., upon receiving a letter from the appellant George Hamid stating that the entertainment would not be supplied for the 1931 fair, testified that a conference was arranged with Frank Wirth, because he had made the booking through him in 1930; that there were present, besides Colyer and Wirth, Messrs. Springstead and Kinney, both members of the fair organization; that at this conference Frank Wirth said he was out of the fair-booking business; that he could not do anything for them. This witness further testified that Wirth suggested that Colyer should see the circus Wirth was then operating individually at Elmira; that " if we saw the circus and liked it, that we could make arrangements with Phil Wirth to book the circus in Cobleskill in place of the contract." The witness stated: " Q. Did he tell you why you would have to make your arrangements with Phil Wirth? * * * A. He did. Q. Tell us what he said? A. He said he had sold out to Mr. Hamid, and his contract called that he could not book any Fairs; he did tell me the period of time, I think it was six or seven years, though I am not sure about that."

Elliot Springstead, who was at the conference testified to by Colyer,. corroborated his testimony. He testified as follows: " Q. Did Mr. Wirth say that he could not book his circus with any Fair? A. Yes, sir; that is correct. Q. Did he say why? A. Yes, sir, he did. Q. Why? A. Because of an agreement between himself and George Hamid when he sold his portion of the business. * * * Q. And did he say that he would like to sell the circus to your Fair? A. Yes. Q. What did he say would have to be done if it were sold to the Fair? A. That it would be necessary for us to buy the

circus through his brother Phil. Q. Phil Wirth? A. Yes. Q. Did he say that he could not sell the circus? A. He did, yes."

Fred W. Kinney, president of the Cobleskill Coal Company, was also present at the conference between Wirth, Colyer and Springstead, and corroborated the above testimony. "He said that he also was not in the booking game, but this circus could be sold through Phil Wirth. * * * Q. At that time did Mr. Wirth state why you would have to book the circus through Phil Wirth? * * * A. Yes. As I recall, he said the contract did not allow him to book circuses or free acts, I cannot give you the exact words. Q. At Fairs? A. At Fairs."

The respondent Wirth denied having made any of the aforesaid statements. All of these witnesses appear to be disinterested witnesses. Wirth admitted that he had known several of them for many years and was friendly with them. His uncorroborated testimony in contradiction of their testimony, taken with the important documentary evidence, indicates to some extent the unreliability of Wirth's testimony on the trial. That testimony, coupled with his conduct after the signing of the contract in May, 1931, shows that these witnesses must have quoted him correctly.

There appears to be no question that the contract clearly prohibited Frank Wirth from booking his circus at a fair or park; that he complied with the provisions thereof until he booked the five acts for the Timonium Fair at Baltimore, Md., in February, 1932. His present contention, that the contract does not prohibit him from booking a circus at fairs and parks, is clearly an afterthought, based on the fact that he believed or was advised that he had found "a loophole" in the contract.

The fact that the defendant Wirth construed the contract as prohibiting him from exhibiting any circuses at a fair or park is strong evidence that he had no doubt about its terms. The defendant is bound by that construction. (*Woolsey* v. *Funke*, 121 N. Y. 87; *City of New York* v. *New York City R. Co.*, 193 id. 543.)

The judgment appealed from should be reversed, with costs, and judgment directed for the plaintiffs in accordance with this opinion, with costs.

FINCH, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Judgment reversed, with costs, and judgment directed for the plaintiffs in accordance with opinion, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.