Dore, J.
Plaintiff, an accountant, former partner of defendants’ accountancy firm, appeals from judgment after trial at Special Term in defendants’ favor enforcing against plaintiff a restrictive covenant in the partnership agreement. The covenant, so far as relevant, provides that if a partner voluntarily withdraws from the firm he will not for four years thereafter either individually, as 'a member of a partnership, or as an employee, practice accountancy within 100 miles of any city in which the partnership or any associated partnership is located at the time of the withdrawal.
Before becoming members of defendant partnership, plaintiff and defendants had as members of three prior separate firms practiced accountancy for many years. By the partnership agreement in question, the members of those three firms including plaintiff and all defendants became members of defendants’ new firm which opened for business on September 1, 1947.
On October 10, 1947, the new firm’s partnership management committee, of which defendant Bailey, chief executive of the partnership, was chairman, notified plaintiff that he should move *529 from New York to Hartford, Connecticut, and take charge of an office for the new firm to he opened there. As plaintiff had his residence and his family, and had practiced accountancy in New York City during most of his adult life, he objected to the change on such grounds and also on the ground that it would not be for the best interests of the firm. Bailey told plaintiff that if he did not go to Hartford the matter was serious and his participation in the firm would be reviewed and might be reduced. Defendant Smart, plaintiff’s former associate in one of the prior firms and a member of the management committee of the new firm, also told plaintiff that if he did not go to Hartford plaintiff’s participation would'be “ coldly ” reviewed with a view to a substantial reduction thereof. Plaintiff conferred with Bailey and later asked Smart to speak to Bailey for him in an effort to convince Bailey that the move was a bad one for the firm as well as for plaintiff. Smart did so, but Bailey remained adamant. After further but futile efforts to settle the issue amicably, plaintiff on October 30, 1947, informed the new firm that in view of the unsatisfactory discussions with respect to his position in the firm that brought in question the security of his future prospects, he had no alternative but to withdraw as a member, and gave notice of his intent to do so effective January 31,1948.
Thereafter efforts were made to agree on a modus vivendi that would enable plaintiff to practice his profession without defendants claiming infringement. These efforts came to no fruitful outcome although plaintiff, in spite of the fact that he had been with the new firm for only two months, offered to assure defendants he would not infringe on defendants ’ own clientele. When it was obvious that no 'reasonable arrangement could be reached, plaintiff brought this suit asking for a declaratory judgment holding the restrictive covenant invalid and enjoining defendants from enforcing it.
In a decision and opinion embodying the court’s findings and conclusions, the court held after trial that plaintiff’s withdrawal was voluntary and the restrictive clause valid and binding on plaintiff, supported by consideration and mutuality; that the arrangement was analogous to the sale of a business and the public interest could not be harmed; and that if plaintiff practiced accountancy outside the area and genuinely in good faith maintained his residence outside such area, he would not violate the contract by occasionally going into the restricted area but would violate if he used such trips to get new clients therein ; the court also held that Hartford, Connecticut, was outside of the 100 mile area. Judgment was directed accordingly.
*530 Plaintiff contends that his withdrawal was not voluntary and, accordingly, the restrictive clause is not applicable; that such clause is void as against public policy, being unreasonably broad in its scope and resulting in hardship to plaintiff disproportionate to any proper need for defendants’ protection; and that the clause is also void for lack of mutuality and consideration.
Defendants urge that the nature of professional partnerships requires the protection of the restrictive covenant herein, as the partnership agreement provides that on withdrawal a partner would have no interest in the firm name or good will and, accordingly, the parties intended to contribute to the firm as partnership property all of their clientele and professional good will; and the only way to protect such good will is to prevent a withdrawing partner from trading in competition with the firm on the good will he had previously dedicated to the firm. Defendants also point out that a restrictive covenant is enforced against a vendor of a business because it is fair to prevent him from trading on the good will he has conveyed in the sale, and cite numerous cases having relation to the sale of a business or the sale of stock such as Diamond Match Co. v. Roeber (106 N. Y. 473); Wirth & Hamid Fair Booking, Inc., v. Wirth (240 App. Div. 413, mod. 265 N. Y. 214), and Alden v. Wright (175 App. Div. 692). Defendants also rely on employer-employee cases upholding wide territorial restrictions against former employees such as Magnolia Metal Co. v. Price (65 App. Div. 276). Defendants further contend that the time and scope of the restriction herein are reasonable, and the covenant is supported by consideration and mutuality, the consideration being the mutual promises of the parties at the time the entire partnership agreement was executed.
We are not called upon to decide generally whether any agreement of a partner not to compete with his former partnership is void or opposed to public policy; the sole issue is: whether this particular agreement in the light of its extent, scope and purpose and all the facts and circumstances presented, is invalid and void. The new firm has offices in New York, Detroit, Chicago, Minneapolis, Dayton, Cleveland, Pittsburgh, St. Louis, Los Angeles and Seattle. If valid, the restrictive clause here in question bars plaintiff, who has practiced accounting for over twenty-five years, from practicing his profession in twenty of the principal commercial centers of the United States, although defendants have only ten offices in those areas. Plaintiff had his residence and his family and practiced for the greater part of his adult life in New York City. The trial court conceded that enforce *531 ment of the covenant bears heavily on plaintiff and prevents him from practicing accountancy in a very large portion of the northeastern part of the United States, a considerable part of the State of Washington and a part of the State of California. The restrictive clause does not contain any terms under which a court may consider the area as divisible and thus hold it enforcible within reasonable limits; it must stand or fall as a whole.
To be able to practice his profession as plaintiff has on a national scale, he would have to be connected with a firm engaged in that type of practice. With the restrictive covenant here in question, it would be practically impossible for him to do so since such practice would normally require unrestricted practice from time to time within the restricted areas including New York, Chicago, Pittsburgh and Philadelphia, and other important commercial centers within the 100-mile restrictive covenant. This is indicated by the record facts. After he was out of the firm, plaintiff made diligent effort to find such connection that would be satisfactory to defendants but the efforts were vain as defendants were intransigent on enforcement of the covenant to preserve, as they claimed, its “ integrity ”.
We think this case is not analogous to a sale of a business and is not controlled by rules of law in cases involving restrictive covenants in such sales. In the sale of a business, the seller sells the enterprise and its good will, receives in return and keeps for himself the full purchase price. In such case, the seller realizes and has the benefit of the full purchase price of the business and its good will and there is a rational basis for protecting such good will from the seller’s later competition; but even in such case the courts hold the restrictions must be reasonable. In the case at bar, however, no such sale of a commercial business and its assets is involved; no purchase price was received and retained without restriction by plaintiff on separating from the firm. When the new firm was constituted, the parties entered into a joint venture to practice accountancy together, each one bringing his own clients, his own personal professional skill and reputation, his personal ability and his business associations. So-called advisory partners of the new firm on withdrawal receive a continuing participating interest during the period of restriction and participation for a stated period is also provided the estate of a partner who dies or retires on reaching retirement age. But under the terms of the restrictive clause before us, an active partner such as plaintiff on withdrawal receives back nothing for his contribution of good will. All that, including his own clientele, doubtless the net result of a lifetime of effort *532 and practice in his chosen profession, is supposed to remain with the new firm without any continuing participation interest whatever. Such partner gets back only the cash capital he contributed and earned salary and participating interest and profits to the time of effective withdrawal.
The real purpose of this particular restrictive clause in its whole context and all facts and circumstances here disclosed, including defendants ’ own testimony and acts, is to prevent any voluntary withdrawals from the firm and compel active partners who came in with clients and good will to remain with the firm indefinitely until they are forced by partnership terms to withdraw or reach the age limit for retirement. The drastic penalty for voluntary withdrawal herein is threatened total loss of all clients of the withdrawing partner (whose acquisition may represent a lifetime’s effort and labor) plus total loss of all practice of his profession for four years in widely scattered areas in major commercial centers of the United States, — in effect in the only places where such withdrawing partner normally could succeed in private practice of his profession. For this Draconian forfeiture on voluntary withdrawal no compensation whatever is here provided. Defendants fail to realize that what they call the “ dedicated good will ” a partner gives the firm is in the final analysis in accountancy, as in the practice of law by an attorney, nothing other than the person of the partner. In the light of what appears to be the real purpose of the restrictive clause we may say of it what this court said of another restrictive clause that was held to have a similar purpose, namely, that it “ savored of servitude ” (Kaumagraph Co. v. Stampagraph Co., 197 App. Div. 66, affd. 235 N. Y. 1, 7).
What happened when this plaintiff was separated from the partnership, is indicative of the futility of the clause except indeed to inhibit and prevent any withdrawal whatever. Three major clients whom plaintiff brought to the new firm promptly withdrew their patronage. They wanted the person who had served them for years and when he was no longer available in the firm or permitted to serve them outside the firm, they went elsewhere. They were lost not to defendants only, but also by enforcement of the restrictive clause to plaintiff. Defendants have grasped at too much and have lost all (Herreshoff v. Boutineou, 17 R. I. 3).
The action is in equity and on the facts disclosed, we think this effort to deprive plaintiff of the free use of his abilities to practice his profession should not be countenanced by a court of equity. As the Court of Appeals said in Clark Paper & Mfg. *533 Co. v. Stenacher (236 N. Y. 312, 318): “ The fact is, the plaintiff sought in this indirect way to prevent by such an agreement its employee from leaving its service and did not primarily seek to enjoin birn from imparting information which might do it harm. It anticipated no other harm than might come from a trained salesman carrying his acquired skill elsewhere.”
In that case the court held that a negative covenant not to work for another will not as a rule be granted save in exceptional cases where by reason of the extraordinary character of the services violation of an agreement will so injure the employer that an action at law affords no adequate remedy; the court struck down the restrictive covenant there in question. The court cited and quoted (p. 321) with approval what the House of Lords said in Morris v. Saxelby (1 App. Cas. 688, 704 [1916]): “ The case in which the Court interferes for the purpose of protection is where use is made, not of the skill which the man may have acquired, but of the secrets of the trade or profession which he had no right to reveal to anyone else — matters which depend to some extent on good faith.”
The Court of Appeals also pointed out that when enforcement is granted, something special or peculiarly valuable or unfair practice of trade secrets are involved. No patents, secrets or formulae are involved in the practice of accountancy.
This court in a recent case (Murray v. Cooper, 268 App. Div. 411, 413-414, affd. 294 N. Y. 658) held, citing the Clark and the Morris cases (supra) that it is against the public policy of this State, in the absence of special circumstances, to enforce contracts which prevent a person from working at his occupation or entering the same line of business as that of his former employer. Citing a long line of cases to that effect, we said: “ * * * contracts by employees, unreasonably limiting their right to pursue their trade or occupation in the future, are held to violate public policy, because the employees’ means for procuring a livelihood for themselves and family are thereby diminished. They are deprived of the power of usefulness, and the public is deprived of the benefit of the exercise by them of their knowledge and skill.”
In Dr. Miles Medical Co. v. Park & Sons (220 U. S. 373, 406) the court said: ‘1 With respect to contracts in restraint of trade, the earlier doctrine of the common law has been substantially modified in adaptation to modern conditions. But the public interest is still the first consideration. To sustain the restraint, it must be found to be reasonable both with respect to the public *534 and to the parties and that it is limited to what is fairly necessary, in the circumstances of the particular case, for the protection of the covenantee. Otherwise restraints of trade are void as against public policy.” (See, also, Frederick Bros. Artists Corp. v. Yates, 271 App. Div. 69, 71 [1st Dept.], affd. 296 N. Y. 820; Restatement, Contracts, §§ 513-515.) The Restatement with regard to agreements by a “ partner not to interfere * * * with the business of the partnership while it continues, or subject to reasonable limitations after his retirement ” (cl. [d], p. 996) says: “ Moreover, a restriction in the contract of partnership not to compete after its termination must be reasonable in its limits, like a similar promise by an employee. ’ ’ (Restatement, Contracts, § 516, Comment on clause [d], p. 999.)
But that is not all. There are other grounds in this case for holding that this restrictive clause lacks mutuality and consideration. The States of Michigan and California by statute expressly declare restrictive clauses of the nature herein void and unenforcible as against public policy. Under the Michigan statute restraint of trade, whether reasonable or unreasonable, is declared illegal and void.[1] The California statute makes restrictive contracts void if the restraint relates to engaging in a lawful profession, trade or business of any kind.[2] No dissolution of the partnership is here involved. When plaintiff was separated from the firm, defendants had offices in Detroit, Michigan, and Los Angeles, California. The chief executive partner, Bailey, dominant factor in enforcing the restrictive covenant against this plaintiff in New York, had practiced accountancy for thirty-two years in Detroit and still practices there as member of the defendant firm. Accordingly, Bailey himself and other partners who have their offices and residences in Michigan or in California could, if they so desired, leave the firm and continue their practice in those States with immunity from the restrictive clause in the very localities where their practice had been conducted before withdrawal. But on similar withdrawal other partners including plaintiff are barred from practice in the localities where they had practiced all their professional lives. In such state of facts the restrictive clause herein lacks mutuality and is unreasonable and should not be upheld by a court of equity. It is immaterial that this partnership requires that it be construed according to the laws of New York. Even if the contract is valid where made, it will not *535 be enforced in another State if it is repugnant to positive statutory enactment and the public policy of that State and the highest court of the State of Michigan has so held (Seamans v. Temple Co., 105 Mich. 400, 405).
In determining the validity or invalidity of a restrictive clause such as the one here in question, each case must be decided on its own particular facts. On the state of facts here disclosed, we hold that the restrictive clause is, as against this plaintiff, unreasonably broad in its scope, resulting in undue hardship to plaintiff wholly disproportionate to any proper need for defendants’ protection, and is against public policy, and invalid and void for lack of mutuality and consideration.
Although we prefer to rest our decision on the merits of the invalidity of the clause in question, we think it can hardly be said that plaintiff’s withdrawal was strictly voluntary in the sense in which the phrase “ voluntarily withdraws ” is used in the context of this partnership agreement and in the light of all the facts established in this record.
The judgment appealed from should be reversed, with costs to plaintiff-appellant and declaratory judgment entered in plaintiff’s favor, with costs declaring the restrictive clause invalid and unenforcible as to plaintiff, and enjoining defendants from preventing plaintiff from the practice of his profession. The findings of fact and conclusions of law of the trial court inconsistent with the findings and conclusions herein should be reversed and contrary findings made in accordance with this opinion.
Glennon, J. P., Callahan, Van Voobhis and Shientag, JJ., concur.
Judgment unanimously reversed, with costs to the plaintiff-appellant and declaratory judgment directed to be entered in plaintiff’s favor, with costs declaring the restrictive clause invalid and unenforcible as to plaintiff, and enjoining defendants from preventing plaintiff from the practice of his profession. The findings of fact and conclusions of law of the trial court inconsistent with the findings and conclusions herein reversed and contrary findings made in accordance with the opinion herein. Settle order on notice.

 Compiled Laws of Michigan, 1929, §§ 16661, 16667, 16672.

 Deering’s California Codes, 1944, Business and Professions, §§ 16600, 16601, 16602.