CALDWELL-CLEMENTS, INC., Plaintiff, *v.* McGRAW-HILL PUBLISHING COMPANY, INC., Defendant.

Supreme Court, Special Term, New York County, December 8, 1949.

*Robert E. Nickerson* for plaintiff.
*Orison S. Marden* for defendant.

DICKSTEIN, J. Plaintiff has brought this action for judgment restraining defendant from publishing in any of its publications, editorials or feature articles or soliciting or publishing advertising relating to the field of merchandising and distribution of radio and television sets, their parts and accessories in excess of the quantity to be found in its nonradio or non-television publications of February, 1948, from issuance of statements that its publications are preferred trade papers in such field and serve the complete needs of radio and television dealers as well as household appliance dealers, and finally from causing surveys to be made showing that any of its publications is preferred or occupies a superior position, and from using such surveys in the solicitation of business. The complaint asks damage already suffered by reason of violation of the agreement basing the action.

The complaint alleges plaintiff is engaged in the publication of two industry magazines, one of which is devoted primarily to the indicated field, while defendant publishes twenty-six industrial magazines, none of which is devoted primarily to such field. In December, 1941, plaintiff's *Radio & Television Today* was merged with defendant's *Radio and Television Retailing.* The combined magazine thereafter was continued as *Radio Retailing Today* by plaintiff, in which defendant acquired a stock interest and had one of its directors on plaintiff's board.

On February 16, 1948, plaintiff purchased defendant's stock interest. The contract of purchase provided for time payments and that " until such time as all of the aforesaid notes have been paid in full, or until such time as the remainder of the six notes guaranteed by either one of the aforesaid Guarantors shall have become due and payable, pursuant to the provisions of paragraph 2 hereof, whichever is earlier, the Seller will not purchase, start, operate or interest itself directly or indirectly in publishing any publication primarily in the field of distribution of radio and television sets, parts and accessories, and the Purchaser will not purchase, start, operate or interest itself directly or indirectly in publishing a publication primarily in the field of merchandising of electrical appliances, parts and accessories except, however, that nothing herein contained shall preclude the parties hereto from continuing their present publishing ventures." Defendant continued publication of *Electrical Merchandising,* a magazine devoted to the field of electrical appliances, but included as before some matter in the field of radio and television. It is alleged further that defendant announced in its August, 1949, issue its intention to devote

the October, 1949, issue of that magazine primarily to radio and television, which it is claimed is a violation of the agreement which equity should restrain.

The advertised announcement claimed for the issue " the clearest, biggest TV picture ever seen!", " the biggest, most complete, up-to-the-minute section ever presented on television," " editors and field correspondents are contacting dealers, distributors and manufacturers in all sections of the country ", " this issue presents a unique opportunity to TV and allied manufacturers to tell their product story to an interested audience that will read this issue, cover to cover, and keep it for future reference ", " inasmuch as the merchandising channels for appliances are the same for TV — what better way is there to reach them than through the pages of the number one trade publication in their field."

The trial developed a rather stormy history of competition and conflict between the parties. The two who guide the destinies of plaintiff were formerly employed by defendant. There was a series of controversies and settlements composing problems. One such settlement occurred on February 16, 1948, when the agreement in suit was made. Its obvious purpose was to give to plaintiff the exclusive ownership and control of the magazine *Radio & Television Retailing*. The covenant on its face defines and delimits the range of activity of the respective parties pending payment of the notes and restricts competition. It is the meaning and intent of this restrictive covenant that is here involved.

The controversy arises now because, as plaintiff claims, the October, 1949, issue of *Electrical Merchandising* is primarily in the radio and television field and thus violates the covenant. Defendant urges that the highly specialized issue of October, 1949, devoted as it is to the story of a single item, does not transform the original character of the magazine or render it a publication devoted primarily to radio and television in violation of the agreement. No pretense is made that it is not a television issue. It was so prepared, published and presented by the editor, publisher and advertiser.

It may be stated at the outset that there was no proof that the restrictive covenant interfered with the paramount interests of the public. Consequently it gave a measure of protection to plaintiff's interests which must be enforced by injunction if the conduct of defendant withdraws that protection (*Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; *Wirth & Hamid Fair Booking, Inc.,* v. *Wirth*, 240 App. Div. 413). There can be no doubt

of the general purpose and intent of the agreement. Doubt, if any exists, extends more particularly to the question whether the October, 1949, issue amounts to a dishonor of that purpose. Whether defendant has undertaken a project primarily devoted to radio and television in violation of the agreement depends upon the purpose to be achieved by the agreement and its spirit more than upon the strict translation of its words into their commonly accepted meanings. If the October, 1949, issue seriously affects and restricts the intended protection, then the agreement must be so construed as to give effect to the purpose and to strike down such action as defeats it (*Utica City Nat. Bank* v. *Gunn*, 222 N. Y. 204).

In its brief defendant asserts that the contract was signed in the light of its background. That consists of the prior agreements and practice of the parties. Whatever conclusion may be reached of the meaning of the agreement by examination alone of its contents may not prevail here if it is shown to be contrary to the objectives sought in the light of that background. It is clear from the testimony the motivating purpose of the covenant was the adjustment of competition. Defendant indeed inquires whether it would sell its freedom of competition at so small a price. In fact, it did so and if it has invaded the restricted area, plaintiff must prevail. In this instance, as in the *Gunn* case (*supra,* p. 208–209). " To take the primary or strict meaning is to make the whole transaction futile. To take the secondary or loose meaning, is to give it efficacy and purpose. In such a situation, the genesis and aim of the transaction may rightly guide our choice    *   *   * .

" It is easier to give a new shade of meaning to a word than to give no meaning to a whole transaction." So, in *Baumann & Co.* v. *Manwit Corp.* (213 App. Div. 300, 302) the contract was construed in the light of the apparent object " to prevent proximate competition in connection with any of the articles in which it dealt."

The proof has established the statistical position of the magazines involved at the time of agreement and for some years prior to action. The court is satisfied that at least until now neither party has violated the purpose and spirit of the covenant and that no bar exists if plaintiff establishes its right to recover. It is of the opinion that the technical question whether the October, 1949, issue of *Electrical Merchandising* is a " property ", is far less important than the question whether that issue modifies a " present publishing venture " in such manner and degree as to do violence to the protective purposes of the

agreement. What the October, 1949, issue tends to achieve the defendant must be considered to have intended. Similarly, the defendant's expressed lack of intent to repeat the performance is less cogent than the material long-range effect of the disputed issue. It was defendant's testimony that it does not intend to decline business and that any advertising offered in the radio and television field would be accepted. The defendant conducts a business, it was asserted, and presses every competitive advantage in its field. The court cannot fail to consider the fact that the restrictive covenant is of short duration and that upon its expiration the restriction upon competition will be removed when defendant will again be free to re-enter the field fully. It would flout the actualities to turn away from consideration of the relation, if any, of the October, 1949, issue not alone to the remaining period of the covenant but to what will follow. Defendant may of course make all preparation it deems necessary for its activities following termination of the restriction. It may not, however, make them in such way as to hasten their benefit and thereby do damage to plaintiff's intervening rights. It is thus of primary importance to consider whether the October, 1949, issue wholly disregards the required maintenance of the *status quo,* for it is the finding of the court that for the duration of the contract the coverage of the magazine was frozen. Since December, 1941, the relation of the parties was such that major emphasis could not be given by defendant to radio and television. It is the finding of the court that the agreements of 1945 and 1948 continued that relation, while the 1948 agreement in addition finally placed a time limit thereon.

The assertion made with seeming sincerity, that the October, 1949, issue is a single issue project and will not be repeated, is not in itself conclusive. With equal vehemence it was also testified that all proffered advertisements would be readily accepted. After hearing and observing the witnesses, it is the opinion of the court that such was the motivation of the issue. This is further significant in the light of the proof that advertisers budget their expenditures and allocations in advance. In this light it becomes clear that *Electrical Merchandising* was, at least for October, 1949, transformed into a publication having major or chief emphasis on radio and television. By defendant's own claim it could not have greater appeal or wider coverage. In this sense, too, the defendant is in the radio-television field no less merely because in the magazine which completely covers the field in pre-eminent fashion, there is also advertised other items. This cannot be used as a shield to accomplish what

the agreement prohibited. Otherwise defendant could achieve the proscribed, yet be guiltless in a charge of contract violation. Thus, when defendant published its announcement and the October issue in the manner as indicated, it went far beyond the permissible range of action for it in the radio-television field and challenged plaintiff in the very area left exclusively to it.

It is conceded the issue in dispute features television to a greater extent than any earlier issue of *Electrical Merchandising*. Defendant's difficulty arises from its assertion that *Electrical Merchandising* was a " present publishing venture " at the time of agreement and hence excluded from operation of the covenant. This contention is utterly fallacious, for the parties cannot be considered to have done a futile act. The agreement would be valueless if it excluded defendant from the radio and television field except that through *Electrical Merchandising* it could enter the radio and television field. While exclusion was the purpose, defendant would not have granted it unless it could remain in the field to the extent it was then in it. Has defendant taken advantage of that situation in violation of the spirit of the saving clause? Since *Electrical Merchandising* is not a new publication, defendant argues, it could do anything with it so long as it did not thereby enter primarily the radio and television field. That particular publications may and frequently do dedicate single issues to single items is of no moment here, for if such practice violates a restrictive covenant, general practice will not aid the defendant.

Defendant refers the court to no case which would support the proposition that the agreement could be violated only if a new and independent magazine were created specially and exclusively in radio and television. Indeed, as already indicated, to so hold would do violence to the purpose which brought the parties to the agreement. They were dealing not so much with publications or ventures as they were with competition. If it were to be assumed that only a new publication was proscribed, then defendant would be left free to so manipulate its existing ventures as to offer to plaintiff the further competition the agreement sought to avoid. It is a fair inference from the testimony that this was not intended or permissible and the court so finds.

Indeed, a cause of defendant's behavior is not difficult to discover. It was its testimony that the October issue gave major emphasis to radio and television. At least 32% of the editorial features are in that field and approximately 20% of the advertising. The other items covering scores of appliances are given,

as defendant testifies, only minor emphasis. These percentages far exceed any prior coverage. But more important, it is a coverage which could not be fuller or have greater emphasis. Defendant testified further this primary effort will be used as basis in the future for securing its advertising and all advertising, regardless of quantity, will be accepted. This no doubt has arisen at this time for, as defendant testified, there is a boom in the radio-television field, it is a very " hot subject now in the trade " and the journal must be " newsworthy ", and there is " nothing static in our business. A magazine to be successful cannot freeze itself to any one particular thing and still stay in business." Thus, the intent to enter into the radio-television field to its fullest extent is made manifest. The defendant had earlier divested itself of its radio-television property, restricted its freedom of competition and now seeks to re-enter the field in unlimited degree. Any strict adherence to the meaning of words used for which defendant contends would thus frustrate what all the circumstances show to have been the objective.

That which is primary is chief or major. The magazine *Electrical Merchandising* is primarily in the electrical appliance field. Yet defendant concedes that while its magazine and plaintiff's are not parallel in scope, they have been in active competition for years. *Electrical Merchandising* is horizontal, covering a broad field, which, it clearly appears, excludes radio and television. The latter field is vertical. Both journals reach the same market. The proof does not show that chief emphasis has been laid upon any item as it is upon radio and television in the October, 1949, issue. There is no chief emphasis generally in *Electrical Merchandising,* the magazine being devoted primarily to the broad field comprised of a host of electrical appliances. If perchance *Electrical Merchandising* has in the past and did presently emphasize deep freeze or refrigerators or washing machines or dishwashing machines, plaintiff could not complain, for the concern of the parties and of the agreement was with radio and television. What defendant may have done in other activities it was not for the duration of the contract to do with radio and television. Moreover defendant refers to no authority to support the proposition that violation would occur only if a new and independent publication, devoted primarily to radio and television, were created. It does refer to cases construing section 75 of the Federal Bankruptcy Act (U. S. Code, tit. 11, § 203). The inquiry whether a debtor is primarily engaged in farming is not at all parallel to the question here. Defendant need not be engaged primarily in radio and television

to violate the contract. It need only make a full and primary effort in that field to breach the limits of competition afforded it by the agreement.

The October, 1949, issue, it is conceded, is devoted chiefly to radio and television. When it is considered that the advertised announcement referred to the issue as containing the fullest coverage of permanent value to the entire radio and television field, the October issue assumes great proportion. While the advertised announcement may be said to be only a blurb, yet its appeal and application are as broad and extensive as the entire radio and television field and it claims for the magazine the fullest coverage and pre-eminence in the field. The cover of the issue is television. The advertisement and the issue may well tend to pre-empt the field for some period to come or at least to offer to plaintiff a present competition not contemplated and expressly prohibited. The court cannot disregard the actualities as they concern the probabilities to ensue upon termination of the agreement and the impact of the October, 1949, issue upon those probabilities. The defendant's testimony was that all advertising will be accepted. Defendant is in business for that purpose. While the parties were obliged to provide in the agreement for maintenance of the *status quo,* defendant has undertaken a publication which was within the intended prohibition and which it should have known could be calculated to increase the measure of competition offered plaintiff to such an extent as to constitute violation of the spirit underlying the freeze created for the protection of plaintiff for the period of payment of the outstanding notes.

The defendant, as stated, is of course free to re-enter full competition in the future. The surveys conducted by it are legitimate preparation for future enterprise. The use of those surveys in the form of the October, 1949, issue or otherwise to stimulate the competition during the period of prohibition is premature and wrongful. To suggest that the devotion of a single issue to radio and television is not the maintenance of a single publishing property continuously in the prohibited field is to require a standard of interpretation that would strain the purpose and intent of the agreement to the point of nullifying it. Its primary purpose was to oust defendant from the field except to the extent it was already in it. The exception must have been minor if the prohibition had any meaning. The activity of defendant in the radio and television field through the October, 1949, issue cannot be regarded as minor. The activity of the defendant under the saving clause is no longer

minor and violates the agreement. When considered in the light of practice in singling out specific items of electrical appliances for foremost treatment in an issue, the controversy may appear to be specious. Defendant, however, created the situation in which the singling out of radio and television could not be so considered. It had for itself closed the door to radio and television for such treatment. The disputed issue upon defendant's own admission partakes of the fullest competitive participation in the field at least for that issue. The agreement cannot be said to permit that even for one issue. Certainly defendant could not during the term provided create, organize and publish a wholly new magazine in the field. It cannot achieve any part of such project indirectly if to do so would infringe upon the field which the spirit and purpose of the agreement expressly and exclusively allocated to plaintiff. The issue does that. Its chief devotion is to radio and television. A magazine whose primary purpose is related to electrical appliances with no chief emphasis on any one of many appliances has been at least for one month, with long-term effects, transformed into a magazine with chief emphasis on radio and television. The emphasis in fact, upon defendant's own admission, could not be greater. It would do violence to the agreement to say this is permissible. A different result may be reached as a matter of objective observation in studying the magazine and its content before and after October, 1949. The results of such an objective survey are of no aid or consequence whatever where a contract such as this exists and a construction is required that will fulfill its purposes and afford the intended protection. That sole purpose was to freeze competition for a limited period, thus continuing a long-standing relation between the parties.

The court is conscious of the effort and expense entailed in the production of the October issue and the freedom generally of the defendant to engage in its competitive enterprise and to utilize its fullest capacities therein. Such freedom may equally freely be restricted by private agreement, in which event the remaining freedom of the defendant is not to be respected any more than the benefit which defendant has thus freely conferred upon plaintiff. Defendant has in effect said that plaintiff may for a while have exclusive exploitation of the field for a price and while the price is being paid it will remain outside it except to the extent it is already in it. Its participation will not be enlarged. Now, says defendant, as a matter of practice,

secondary participation is on occasion and for a single issue promoted to primary participation, and that is all that it has done here. That was enough, however, to defeat the purpose of the restrictive covenant. It enlarged participation in a manner which the parties agreed would not be done. While single items of electrical appliances were in the past given chief emphasis in single issues, the defendant was at all times engaged primarily in that field. Defendant could hereafter be engaged primarily in the radio and television field also, as it had been in the past. Presently it cannot be so engaged because of the agreement.

The October, 1949, issue is a chief or primary engagement. During a period when such primary participation was not allowed, it may not be allowed even if temporary. It claims to be pre-eminent. It therefore ousts plaintiff of pre-eminent exploitation as between the parties. Plaintiff cannot have exclusivity and defendant pre-eminence at one and the same time. Either plaintiff was to have exclusivity throughout the contract period, when defendant could not achieve pre-eminence, or the contract means nothing. The agreement runs into 1951. Defendant was restricted to secondary exploitation through the magazine *Electrical Merchandising*. Clearly, it was not to participate any longer in the radio and television field in a manner approaching full and primary participation. This it did. According to defendant's contentions, it could do so even several times during the three-year period. Having divested itself of its only radio and television property, it also parted with the right of such type of participation. Defendant was subjected to a continuing secondary position. In October, 1949, it claims to hold a pre-eminent position and took measures to achieve it.

Defendant urges that the agreement is too vague and too difficult to enforce, in that no standard is fixed for its maximum participation. Some difficulty there may be, but not in such measure as to render supervision of a court of equity improper. Since it is the opinion of the court that the agreement and the language employed were designed to continue the relation existing between the parties and to define the areas of competition, it naturally follows that the level existing in the preceding years is adequate guide. Consequently, the measure of relief is appropriately propounded in plaintiff's memorandum after trial at page 55, limited, of course, to the remainder of the contract term.

It may be added that a strict interpretation of the contract might well lead to the same result. Defendant is prohibited from becoming interested indirectly in publishing a publication primarily in radio and television. Violation of this restriction would occur then only through a separate and independent property whose primary and continuous purpose was radio and television. It could, however, continue present ventures. Since nothing is stated which expressly prevents alteration of those ventures, adjustments such as the October, 1949, issue are permissible. The difficulty with this reasoning is that such interpretation does not go far enough. That which is instinct in an agreement must be considered part of it, to give it either meaning or completeness, or both. While the contract is seemingly silent as to what may or may not be done with existing ventures that defendant may continue, yet instinct in the saving clause is a promise or understanding that the liberty granted by it will not be so used as to nullify the restriction from which such liberty was culled.

It was stipulated upon the trial that either party was at liberty to rely on the whole or any portion of the examinations before trial of plaintiff's officers, subject to the objection of the other. Plaintiff's briefs have quoted extensively from such examinations and objections have been raised by the defendant. The following-quoted portions of such examinations have not been considered, and to that extent the objections are sustained: page 130 of the deposition, referred to at page 4 of plaintiff's memorandum after trial; that portion quoted at page 13 of the memorandum following the first sentence of the answer; the references on page 26 of the memorandum, referring to pages 123 to 127 and page 160 of the deposition, have been entirely disregarded except the last question on page 124 and all of pages 126 and 127; the references on pages 34 to 38 of the memorandum to pages 21 to 39 of the deposition have been disregarded as to the third and fourth paragraphs on page 23 and the second and third paragraphs on page 24, and the balance allowed; finally, the references on pages 42 to 48 of the memorandum to pages 22 to 24 and 55 to 58 and 64 to 66 of the deposition have been disregarded as to that portion of the second answer on page 55 following the words, " Yes, sir ", and the second paragraph of that answer, and the balance allowed.

Defendant renews its motion to rule out all parol evidence received as background or explanation of the agreement. It now cites plaintiff's statements in proof that the contract needs no background proof and therefore urges that the court so hold,

and then goes on to state the only relevant testimony and evidence are the contract, the October, 1949, issue, the testimony of no intent to repeat the October issue, a minimum of background material and consideration of the practical construction placed on the contract. The motion is overruled.

Plaintiff has moved, by notice dated November 1, 1949, for leave to serve a supplemental complaint alleging an additional cause of action arising since commencement of suit. The application seeks in addition an order compelling production of certain material. Complaint is made that defendant has published and distributed its issue No. 44 of *Appliance and Radio Highlights*. In that bulletin is contained the following: '' TV Section in ELECTRICAL MERCHANDISING's Oct. issue is probably largest no. of editorial pages ever devoted to TV merchandising in trade publication, altho' still less than one third of issue's total editorial content. Reprints of TV Section available to our consumer publication friends.''

Defendant has in opposition produced a copy of such bulletin and other material, which need not here be further described. Whether plaintiff has an additional cause of action is not passed upon and no remedy it may have with respect to the matters now brought to the attention of the court is intended by this determination to be denied to it. However, the judgment awarded as a result of the trial of the action is sufficiently broad to restrain the continued use of the October, 1949, issue of *Electrical Merchandising* as promotional material and to assess all damage sustained to date as a result of the publication of that issue and its exploitation. The motion is, for the reasons indicated, denied.

The court accordingly finds for the plaintiff. This opinion will constitute the decision and findings. Settle decree providing for assessment of damages.