LEVINE DISTRIBUTING Co., INC., Plaintiff, *v.* HYMAN RUBINSTEIN and Another, Defendants.

City Court of New York, New York County, November 25, 1935.

*Charles A. Cohen*, for the plaintiff.

*Louis Jacobs*, for the defendants.

MADIGAN, J. 1. Is the agreement illegal under section 340 of the General Business Law?

2. If it is not illegal, can plaintiff recover more than nominal damages?

3. Plaintiff sold to defendants over 1,000,000 canvas gun-breech covers or cases. Then plaintiff showed defendants how the covers could be made into knapsacks, of a kind referred to, by the parties, as " hiking bags." That was accomplished by gusseting, making " pockets," and by adding straps and buckles.

Plaintiff agreed to buy, and defendants agreed to sell, two lots of such " knapsacks " or bags, 30,000 in all; the terms being set forth in two letters signed by defendants.

Each letter contained a sentence reading: " This bag is not to be sold to any of our competitors for a period of six months." The words " our competitors " mean competitors of plaintiff.

Defendants, evading performance of the promise just quoted, failed to live up to the intent and purpose of the parties. Defendants breached the agreement by making sales, in form, to non-competitors which sales were, in fact, arranged by and for the benefit of competitors.

The evidence shows that the promise not to sell to competitors within the stated period of six months related to future transactions and not to the 30,000 bags. Apparently plaintiff had arranged for the resale of the 30,000 when it agreed to buy them. Moreover, its representative had indicated to defendants that he hoped plaintiff would be able to dispose of all the covers which it had sold to defendants, it being contemplated that they would be sold as hiking bags of the kind indicated above.

4. Section 340 of the General Business Law is not applicable, even assuming, for present purposes, that these peculiar substitutes for knapsacks, evidently made possible because of some over-production of canvas breech cases, were articles in " common use."

Plaintiff had developed certain opportunities into a situation which might have proved profitable. In effect it had created a potential interest which it was not unfair to proceed to protect for a short period against a limited number of persons. (See *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473, at p. 482, and *Hodge* v. *Sloan*, 107 id. 244, at p. 248.)

Within the " rule of reason," neither the common law against monopolies nor section 340 of the General Business Law was violated.

" I am convinced that our courts, like the United States Supreme Court since the decisions in *Standard Oil Co. of N. J.* v. *United States* (221 U. S. 1) and *Locker* v. *American Tobacco Co.* (*supra* [121 App. Div. 443]), will apply the ' rule of reason ' to every combination or agreement brought before them. Before it will condemn, there must appear the elements of injury to the public, or monopolistic control of a particular article of commerce, or unreasonable interference with and damage to the business of an individual, or the doing of illegal or unconscionable acts, or specific intent to do injury to some one else, or, in brief, at least some of the circumstances which would lead a court in good conscience to say that a given set of defendants were overstepping the bounds of reasonable ambition and fair play and were becoming a nuisance to their fellow men." (*Barns* v. *Dairymen's League Co-Operative Assn., Inc.*, 220 App. Div. 624, at p. 640.) (See, also, *New York Clothing Manufacturers' Exchange, Inc.*, v. *Textile Finishers Assn., Inc.*, 238 App. Div. 444, at p. 452.)

5. Defendants having breached their agreement, plaintiff would be entitled to compensatory damages if any loss resulted to plaintiff from such breach of contract. But of what legal and valuable right or property was plaintiff deprived as a result of the breach by defendants?

Possibly the parties or their representatives had in mind that, as to sales to plaintiff subsequent to the sales of plaintiff of the 30,000 bags, the unit price would be the same as the unit price for the 30,000. In fact, as to the two lots the unit price was not the same. This may have been because the bags in one lot were " gusseted on two sides," whereas those in the other lot were " gusseted on three sides." But even if it were to be found that there was but one unit price, with variations for different gusseting, it would be futile to talk about what the parties had in mind; for they failed to express or enter into any agreement for a sale or an option, beyond the 30,000 " knapsacks." Furthermore, in that connection nothing is indicated by the two letters mentioned above. Even if a verbal agreement to sell were unassailable, plaintiff could establish no more than nominal damages. As to the " knapsacks," plaintiff had no requirements for its own consumption and it did not bind itself to take, at a stated price, all it might need for any purpose. The parties did not make any definite or certain agreement that plaintiff would use its best efforts to sell defendants' goods, either exclusively or otherwise. Beyond the 30,000, plaintiff evidently had no contract for the resale of some or all of the " knapsacks." In addition to the 30,000, the parties failed to contract, even verbally, that defendants would sell and plaintiff would buy any quantity, definite or indefinite, fixed or ascertainable, at a stated price. Plaintiff did not become obligated, contingently or otherwise, to take more of the bags at any price; and it obtained no legal right to any more.

The parties failed to make an agreement for a sale or option beyond the 30,000 " knapsacks." They left defendants free to refuse to make any additional sales to plaintiff; and, as a result, the court is now left to speculate as to whether this claimant could have induced defendants to make any further sales to it. Guesswork cannot serve as a substitute for deduction from evidence. In this case there is not merely an uncertainty as to how much plaintiff may have been damaged. Such uncertainty would not be fatal. It is present in many classes of actions where substantial recovery is allowed. In this action, however, one must guess as to whether plaintiff suffered any damage.

A case which is not directly in point, but which is instructive, is *Schlegel Manufacturing Co.* v. *Cooper's Glue Factory* (231 N. Y. 459).

6. Defendants' motions to strike out testimony are denied. Defendants are chargeable with the acts of those scheming and acting, with them, to make it appear that they were not violating their agreement. Plaintiff's motions to strike out testimony are denied. Defendants' motions to dismiss are denied. Judgment in plaintiff's favor for six cents.