Sidney A. Fine, J.
Plaintiff is a New York corporation engaged in selling products for advertising purposes. Defendant is a partnership comprised of four partners, and engaged in the manufacture of plastic products. In November, 1955 George S. Krasnov, one of the partners of the defendant company, solicited plaintiff’s business. Plaintiff was interested in acquiring a source for the manufacture of a specially designed plastic rain bonnet which could be folded, when not used, into a compact package and inserted in a small vinyl case. Neither plaintiff nor defendant had, up to that time, manufactured that item, but plaintiff’s general manager was familiar with the item as the result of previous employment with another company which was engaged in manufacturing it. Plaintiff’s president, Levin, suggested to Krasnov that Krasnov’s firm undertake to manufacture the article in question for plaintiff on an exclusive basis. A special machine was required for the operation, and plaintiff’s president informed Krasnov where he could purchase that machine.
Under date of November 29, 1955, a letter agreement was signed by Levin, on behalf of plaintiff’s corporation, and by Krasnov on behalf of his firm. Krasnov’s firm was, however, designated in that agreement not as Crusader Manufacturing Company, the defendant partnership in this case, but as Crusader Manufacturing Corp., apparently a separate corporate entity located at the same address as defendant partnership, of which Krasnov is an officer and stockholder.
The letter agreement recited that plaintiff was ordering from the said Crusader Manufacturing Corp., 100,000 of the rain bonnets, described at “ Rain Mates ”, as per plaintiff’s sample, at a price of six and one half cents each. It was further provided that Crusader Manufacturing Corp., would “ order immediately the necessary folding machine on the basis of this order and give * * * [plaintiff] delivery of 15,000 per month starting Jan. 1, 1956 ”, and that plaintiff “ can increase this delivery by form of letter ”. The agreement, in addition, contained the following restrictive covenant: “It is understood that Crusader or any of its affiliates will not manufacture the Rain Mate for anyone else but Larido for a period of three years.”
*233 Although the agreement was made with Crusader Manufacturing Corp., it appears that all the dealings thereafter relating to the manufacture of these rain bonnets were conducted not by that corporate entity but by defendant partnership, Crusader Manufacturing Company. It thus appears that the necessary equipment was purchased by defendant partnership, that the order for the 100,000 rain bonnets was filled by that partnership, that the invoices for the purchase price of such bonnets were all issued in its name, and that such payments as were made by plaintiff were in the form of checks payable to the order of defendant partnership which the latter indorsed and collected.
In addition to facilitating defendant’s purchase of the necessary machine, plaintiff further had its general manager visit defendant’s plant and assist defendant in connection with the operation of the machine and the manufacture of the bonnets.
After the initial order for 100,000 bonnets had been filled, plaintiff placed an additional order for another 100,000 bonnets with defendant. Upon learning, however, that defendant had sold a quantity of such bonnets to another dealer and was threatening to make other such sales, plaintiff, after first conferring with Krasnov, notified defendant to “ hold up” the second order ‘ ‘ until further notice ’ ’, and withheld payment of the balance due on the initial order. Plaintiff then brought this action for a permanent injunction to restrain defendant from violating the restrictive covenant hereinbefore quoted, as well as for an accounting for the profits realized by defendant by reason of the violation of that covenant. In addition to denials and a number of affirmative defenses, defendant’s answer interposed six counterclaims, to which plaintiff served replies. At the trial, the parties stipulated that the only issue to be tried was whether plaintiff was entitled to a permanent injunction, and that the issues raised by the counterclaims were to be severed for separate disposition in subsequent proceedings. The parties further stipulated to waive findings of fact and conclusions of law.
The complaint alleged that the letter , agreement of November 29, 1955 had been entered into between plaintiff and defendant and defendant expressly admitted that allegation in its answer. At the trial, however, defendant for the first time raised the objection that it was not a party to the agreement, and that the agreement was signed by Crusader Manufacturing Corp., which was asserted to be an entity separate and distinct from defendant partnership, Crusader Manufacturing Company.
*234 Defendant also urged a number of other defenses, including the claims that the restrictive covenant was illegal as effecting an undue restraint of trade, and that injunctive relief should in any event be denied on the grounds that (a) the agreement lacked mutuality, (b) plaintiff had itself breached the agreement by withholding the balance due on the initial order, and (c) plaintiff had an adequate remedy at law.
I find no merit in defendant’s claim that the agreement is not binding upon it because it was not a signatory thereto. As noted above, the evidence showed that in all the dealings relating to the transaction covered by this agreement, both parties regarded the contract as one between the plaintiff and the defendant partnership. There was thus no further mention of Crusader Manufacturing Corp., after the signing of the agreement. Performance was rendered by defendant Crusader Manufacturing Company, the part payments on account of the purchase price were all made by the plaintiff to that company, and the subsequent order for 100,000 bonnets was given by plaintiff to that company. The evidence is thus compelling that the parties throughout their dealings regarded Crusader Manufacturing Corp., as synonymous with defendant Crusader Manufacturing Company, as defendant in effect conceded in its answer. (Cf. Matter of Malaspina [Corsi], 309 N. Y. 413, 419.) Even if, however, the two entities were to be regarded as separate and distinct, the evidence in any event established that the agreement was in effect converted by the acts of the parties into one between plaintiff and defendant. (Cf. Lane & Co. v. United Oil Cloth Co., 103 App. Div. 378.)
Moreover, the restrictive covenant recited that it was binding, not only on the signatory Crusader Manufacturing Corp., but on ‘ any of its affiliates ’ ’. The evidence established that defendant was an affiliate of Crusader Manufacturing Corp., and that in filling the initial order for the 100,000 bonnets it had notice and knowledge of the restrictive covenant through its partner, George S. Krasnov. To the extent that it was valid as against Krasnov’s corporation, the restrictive covenant would accordingly also be binding on defendant partnership. (Cf. Hodge v. Sloan, 107 N. Y. 244.) The result is that, whichever of. the foregoing approaches be taken in this case, defendant cannot avoid liability merely on the ground that the agreement was not signed in its name.
The questions remain whether the restrictive covenant may be sustained as a reasonable restriction on defendant’s freedom of activity, and whether equity should lend its aid to the enforcement of that covenant in the circumstances of this case. It *235 should be noted that no question of trade secrets is here presented.
In considering the foregoing questions, it is necessary to analyze the respective rights and obligations of the parties under the contract. It is clear that the contract cannot be challenged on the ground of lack of a legally sufficient consideration. The placing of the initial order for 100,000 bonnets, mentioned in the contract, furnished the requisite consideration (Cohen & Sons v. Lurie Woolen Co., 232 N. Y. 112, 114). It is equally clear, however, that, while restricting defendant’s right to manufacture bonnets for anyone other than plaintiff for a period of three years, the contract in no way obligated plaintiff to purchase any additional bonnets from defendant beyond the initial order.
Plaintiff urges that a promise was fairly to be implied on its part to continue ordering bonnets from defendant, and it concedes that “ if the plaintiff had stopped ordering the bonnets after the initial order had been fulfilled, the defendant would certainly have had a grievance ”. Even if, however, a promise to place additional orders were to be implied, any such promise would be unenforeible by reason of indefiniteness. For the number and quantity of such orders were nowhere specified or otherwise determinable — the mention made in the agreement of delivery of 15,000 bonnets per month being obviously referable solely to the initial order for 100,000 bonnets; and there was ‘1 no standard mentioned [in the agreement] by which the quantity * * * to be furnished can be determined with any approximate degree of accuracy ”. (See Schlegel Mfg. Co. v. Cooper’s Glue Factory, 231 N. Y. 459, 463.) It is further questionable Avhether the unit price may be regarded as having been definitely fixed by the parties for all future orders.
Decisions based on agreements to furnish all of the requirements of an established business, involving as they do a fairly definite standard, are not in point. (See Schlegel Mfg. Co. v. Cooper’s Glue Factory, supra.) Apart from the fact that plaintiff’s bonnet business was a new venture and by no means established (cf. Nassau Supply Co. v. Ice Service Co., 252 N. Y. 277, 283), there was no agreement either by plaintiff to purchase, or by defendant to supply, all of plaintiff’s requirements of bonnets, and there is no claim that any such obligation on the part of either party was implicit in the agreement. So far as appears, there was nothing to prevent plaintiff from manufacturing bonnets itself or from placing orders for such bonnets with manufacturers other than defendant. The evidence indeed showed that plaintiff actually purchased a machine in March, 1956, for the manufacture of such bonnets by its oavu personnel. *236 The placing of any orders for additional bonnets with defendant, and the quantity to be ordered, were matters left to plaintiff’s untrammeled choice.
The agreement thus neither obligated, nor conferred any legal right on, plaintiff to purchase any additional bonnets from defendant beyond those covered by the initial order. Nor can the agreement be read as granting plaintiff an irrevocable option to place additional orders at such times and in such quantities as it might choose, at the unit price fixed for the initial order, throughout the three-year period specified in the restrictive covenant.
"What we have, then, is a situation where plaintiff has placed an order for 100,000 units at a specified price, which order was filled within a few months, and it has no further rights or obligations under the agreement other than its alleged right to restrain defendant from manufacturing the same item for any other purchasers, apparently anywhere in the world, for a period of three years.
It is, of course, settled that not every contract in restraint of trade is to be condemned as illegal. The basic criterion is whether the particular restraint is a reasonable one under all the circumstances. (See Diamond Match Co. v. Roeber, 106 N. Y. 473, 482-486.) Included in the class of contractual restraints which are held to be reasonable, where no aspect of monopoly appears, are those imposed on a seller of property or of a business which are designed to prevent him from competing with the purchaser ‘ ‘ in such a way as to injure the value of the property or business sold ”. (See Restatement, Contracts, § 516, subd. [a]; Diamond Match Co. v. Roeber, supra; New York Bank Note Co. v. Hamilton Bank Note Co., 180 N. Y. 280; Simons v. Fried, 302 N. Y. 323.) Even in such cases, however, the restraint is condemned as unreasonable if it is greater than is necessary for the protection of the property or business sold. (See 6 Corbin on Contracts [1951], § 1387; see, also, Restatement, Contracts, § 515, subd. [a].)
In the present case it cannot be said that the restraint against manufacturing for others anywhere in the world for a period of three years was necessary to protect the value of the 100,000 bonnets purchased by plaintiff or to safeguard any other legal right conferred on plaintiff by the agreement. There is certainly no cl aim that a period as long as three years was required for plaintiff to dispose of those 100,000 items; the evidence, on the contrary, indicated that the market for the items was a fast-moving one. The restrictive covenant in this case can therefore not be upheld on the theory that it constituted “ an integral *237 part of the value of things sold ” (cf. New York Bank Note Co. v. Hamilton Bank Note Co., 180 N. Y. 280, 295, supra).
Another class of cases in which contractual restraints of trade are upheld as reasonable is that involving agreements for exclusive dealing. A dealer and a supplier may thus enter into a contract for the one to sell to, or buy from, the other on an exclusive basis, with a corresponding duty on the other to buy or sell, and such a contract will be upheld, in the absence of any aspect of monopoly, notwithstanding the restriction on the freedom of the contracting parties to engage in dealings with others. (See, e.g., Stemmerman v. Kelly, 150 App. Div. 735; Restatement, Contracts, § 516, subd. [e]; 6 Corbin on Contracts, § 1412; 5 Williston on Contracts [rev. ed. 1937], § 1645.) The theory on which such contracts are sustained is that while “ They are in restraint of trade to some degree; but it is customary and reasonable and not contrary to the public interest.” (See 6 Corbin on Contracts, § 1412, p. 636.)
The contracts in such cases, however, involve not merely an obligation on the part of one of the parties to deal exclusively with the other, but a corresponding obligation on the latter to deal with the former, though perhaps not on an exclusive basis. (See, e. g., Stemmerman v. Kelly, 150 App. Div. 735, supra.) In the ease at bar, on the other hand, as previously noted, there was no obligation on plaintiff to purchase, or on defendant to furnish, any additional bonnets after the fulfillment of the initial order. It can thus not be regarded as ‘ ‘ customary and reasonable and not contrary to the public interest ” (see 6 Corbin on Contracts, § 1412, p. 636), to tie defendant’s hands for a period of three years and restrain it from manufacturing these bonnets for others when plaintiff is under no obligation whatever to order any additional bonnets from it.
The facts of this case bring it squarely within the rule stated in the Restatement of the Law of Contracts (§ 515, subds. [a], [b]), that a restraint of trade is ordinarily unreasonable if it “ (a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or (b) imposes undue hardship upon the person restricted ”. (See, also, Clark Paper & Mfg. Co. v. Stenacher, 236 N. Y. 312.)
A seemingly contrary view was expressed in Levine Distributing Go. v. Rubinstein (159 Misc. 28, 29, N. Y. City Court), but no injunctive relief was there sought, and the restraint involved was of much shorter duration and of far more limited scope. Moreover, there was no full discussion in that case of the theory and policy of the various rules here involved, and the court actually held that the plaintiff was not entitled to an award of *238 more than nominal damages of six cents for breach of the restrictive covenant.
There is the further consideration, bearing on the propriety of granting the equitable remedy of injunction here sought, that ‘ ‘ What equity exacts to-day as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to plaintiff or to defendant.” (See Epstein v. Gluckn, 233 N. Y. 490, 494, per Cardozo, J.) In the circumstances of this case, it is my considered opinion that specific enforcement of the restrictive covenant would go beyond the necessities of protection of any of plaintiff’s rights or interests under the agreement, and would result in undue hardship and oppression upon defendant.
Defendant is accordingly entitled to judgment dismissing the complaint, without costs. It is unnecessary to consider the other questions raised by defendant. The issues presented by defendant’s counterclaims are severed for separate disposition in subsequent proceedings.
The foregoing constitutes the decision of this court upon which judgment may be entered (Civ. Prac. Act, § 440).